Sharon and Otto COLLINS, Natural Parents and Personal Representatives on Behalf of April Pennington, Deceased, and Jewell Stambaugh, Natural Parent and Personal Representative of Timothy Stambaugh, Deceased, Appellants,

v.

ROCKY KNOB ASSOCIATES, INC., Appellee.

No. 93–CA–002750–MR.

Court of Appeals of Kentucky.

June 9, 1995.

Discretionary Review Denied by Supreme Court Jan. 10, 1996.

John L. Barton, Michael S. Endicott, Paintsville, for appellants.

Roger Massengale, J.K. Wells, Wells, Porter & Schmitt, Paintsville, for appellee.

Before HUDDLESTON, JOHNSON and WILHOIT, JJ.

### OPINION

JOHNSON, Judge:

Sharon Collins and Jewell Stambaugh appeal from a summary judgment entered in favor of Rocky Knob Associates, Inc., by the Johnson Circuit Court. We affirm.

This is a wrongful death case. The undisputed facts are that on the late evening of May 18, 1991, April Pennington, age sixteen, and Timothy Stambaugh, age twenty-four, were with a group of other young people in the parking lot of the marina at Paintsville Lake at a time when the marina was closed and deserted. It was prom night and, for

some, the evening's activities included the consumption of alcohol. Sometime after midnight, when their friends were still in the parking lot, Stambaugh and Pennington entered the water, presumably for the purposes of swimming. Approximately twenty minutes later, one of their friends ventured down to the water to check on them and discovered Pennington's body floating face down twenty feet from the shoreline. Rescue workers were summoned and Pennington's body was recovered as was Stambaugh's, the latter being recovered from the lake bottom thirty-five feet from shore in twelve to fifteen feet of water. Autopsies attributed the cause of death of each decedent to drowning. Further, it was determined that Pennington had a blood alcohol content of .10 and Stambaugh had a blood alcohol content of .03.

A wrongful death action was filed by the appellants, parents of the decedents, on May 18, 1992. The complaint alleged that Rocky Knob Associates, Inc. (Rocky Knob), breached its duty of care owed to the decedents. The appellants advanced the theory that Rocky Knob had knowledge that certain hazardous conditions existed on or about the marina, including deep water; unlit shoreline consisting of jagged rocks, submerged obstacles and entanglements; and hazards such as boats, boat wakes, and drunken or vicious third parties present on the premises. It was further alleged that having notice of these dangerous conditions, Rocky Knob acted willfully and maliciously by failing to post no swimming signs, to light the shoreline, and to provide round-the-clock security patrols or rescue equipment, and that such failure was the proximate cause of the deaths of the two young people.

The trial court determined that even if Rocky Knob were negligent, such negligence did not rise to the level of willful or malicious indifference to the rights of the decedents, and therefore Rocky Knob was entitled to judgment as a matter of law under Kentucky Revised Statutes (KRS) 411.190, also known as the Recreational Use Statute. Summary judgment was entered in favor of Rocky Knob and this appeal followed. The appellants argue that Rocky Knob is not exempted by KRS 411.190 from any standard of care imposed by common law for the protection of those using its premises and facilities, and

that even if KRS 411.190 is applicable, a jury question exists as to whether Rocky Knob's conduct was willful or malicious.

The standard by which motions for summary judgment are to be assessed is set forth in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991), which adopted the test articulated in *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985).

> The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor.... Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact.... The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. It clearly is not the purpose of the summary judgment rule, as we have often declared, to cut litigants off from their right of trial if they have issues to try.

\* \* \* \* \* \*

> Only when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted.

*Steelvest,* 807 S.W.2d at 480, 482.

KRS 411.190 provides in pertinent part as follows:

> (3) Except as specifically recognized by or provided in subsection (6), an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

> (4) Except as specifically recognized by or provided in subsection (6), an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreation purposes does not thereby

> (a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

\* \* \* \* \* \*

(6) Nothing in this section limits in any way any liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

Paintsville Lake was constructed in the late 1960s by the Army Corps of Engineers. Beginning in 1973, the United States Army leased a portion of the lake and surrounding land to the Kentucky Department of Parks for a term of fifty years. The Department of Parks, in turn, sublet twenty acres to Rocky Knob for the purpose of operating a marina. Rocky Knob pays the Department of Parks a percentage of gross receipts from the marina operation as rent. Besides the floating marina, the facilities include a boat ramp, parking lot, and picnic area. These facilities are open to the public and no admission is charged. As part of the lease terms, Rocky Knob is required to maintain liability insurance for bodily injuries suffered as a result of its marina operations.

■ KRS 411.190(1)(b) defines owner for this section as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." This broad definition of "owner" would clearly include Rocky Knob. KRS 411.190(1)(c) states that the term "recreational purpose" includes, but is not limited to the activities of "hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites." While the marina is a commercial

venture, certainly its purpose is to foster and give full realization to the recreational potential of Paintsville Lake by the selling of motor fuel, boating and picnicking supplies from the marina store and by the rental of docking slips. However, the appellants counter that Rocky Knob, being a sublessee of the property of another, is excluded from the protection of the legislative enactment by the following language in KRS 411.190:

(7) Nothing in this section shall be construed to:

\* \* \* \* \* \*

(b) Relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

While the appellants' argument is creative, we do not believe it to be a proper application of the cited section for the following reasons. First, Rocky Knob, while it is leasing the property of another, is not using the premises for recreational purposes in the strictest sense, but as we have said, is engaged in a commercial enterprise for profit. Second, interpreting KRS 411.190(7) in this manner would be inconsistent with the express language of KRS 411.190(3) and (4) which specifically provide only for the exceptions listed in KRS 411.190(6). The appellants also argue that Rocky Knob waived the protection of the statute when it agreed to lease terms which required it to maintain liability insurance on the premises. We find this argument to be without merit. Accordingly, we find that Rocky Knob falls within the protective ambit of the Recreational Use Statute.

■ The next issue the appellants present is whether a jury question exists as to whether Rocky Knob's failure to guard or warn against dangerous conditions was willful or malicious, whereby liability would be imposed under KRS 411.190(6)(a).

To date, only one reported decision has addressed the meaning of "wanton or malicious" in the context of the Recreational Use Statute. In *Huddleston v. Hughes,* Ky.App.,

843 S.W.2d 901 (1992), this Court considered a similar question involving the appropriateness of summary judgment in an action controlled by this statute. The Court, after extensive research into the meaning given the term in various legal contexts, equated the statutory language of "willful or malicious" with "indifference to the natural consequences of [one's] actions ..." or "the entire want of care or great indifference to [another's] safety." *Id.* at 906. It was held not necessary to show that a defendant harbored a deliberate intent to harm. *Id.*

In a similar vein, the Supreme Court in *Kirschner v. Louisville Gas & Electric Co.,* Ky., 743 S.W.2d 840 (1988), when discussing the duty owed by a landowner to trespassers under another statute, interpreted "willful" as applying to "conduct which is still, at essence, negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended...." *Id.* at 842–843. "[T]he actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences...." *Id.*

The facts of the *Huddleston* case involved a plaintiff injured on a school playground when a basketball goal fell on him. The injuring apparatus was a freestanding basketball goal not anchored to the ground which was kept from tipping forward by large pieces of concrete positioned to serve as counterweights. Children and young people were known to come on the premises during nonschool hours to play on the basketball court and often removed the concrete to lower the goal to facilitate "slam dunking." The goal had tipped over on a number of occasions because of this practice, but each time it was set upright with no additional measures taken to prevent a recurrence. The Court stated that, on the record presented, summary judgment was improper and the question of whether the landowner's conduct was "willful or malicious" presented a genuine issue of material fact to be decided at trial.

■ It would be a gross misreading of *Huddleston* to conclude that a summary judgment under the Recreational Use Statute is never proper on the grounds that there would always be a genuine issue of material fact of whether the defendant's conduct was "willful or malicious." Obviously, there is some negligent conduct that as a matter of law may not be deemed either "willful" or "malicious." *Huddleston* involved an artificial hazardous condition created and maintained by the landowner. The landowner knew that if the counterweights were removed, the basketball goal was prone to tip over (a fact perhaps not apparent or known to all who played on it), and the landowner should have known that if the goal fell, a substantial likelihood existed that it would strike a player, perhaps causing serious injury. The plaintiff in *Huddleston* argued that each time school personnel set the goal upright with no additional precautions, they were in effect "resetting the trap." The landowner's actions in *Huddleston* were challenged under a theory that may be described as "affirmative" negligence, a term meaning the harm was caused by what the defendant did, but should not have done or should have done differently. By contrast, the situation before us involves a theory of "passive negligence," where the harm was allegedly caused by what the defendant did not do, but should have done. Rocky Knob did not create the lake nor is there any assertion that the deaths were caused by any unusual features maintained on the premises. As the trial court noted, various theories alluded to how the drownings might have occurred, such as the cold water impeded the victims ability to swim to shore; one or both were injured on jagged rocks at the bottom of the lake; alcohol may have attributed to their drowning; or they were possible victims of foul play. Because no evidence was shown tending to support any of these theories, they can only be viewed as speculation. The only thing that is clear is that the deaths were by drowning in the lake waters. From the proof it must be concluded that any hazardous condition and the risk of swimming was reasonably obvious to the decedents and not of Rocky Knob's making. The risks were natural and inherent to bodies of water. Rocky Knob was entitled to assume that the decedents would see and observe that which

would be obvious through the reasonably expected use of an ordinary person's senses and would act accordingly. KRS 411.190(7)(b) specifically provides that a person using the land of another for recreational purposes is not relieved from his obligation to exercise care as otherwise required by law. The failure of Rocky Knob to guard or warn against the dangerous condition cannot be said to be "willful or malicious."

■ The Recreational Use Statute was adopted to encourage owners of land and water areas to make their property available for recreational use by limiting their liability for injuries which might be suffered by those coming upon the property. KRS 411.190(2). While recognizing that the Recreational Use Statute displaces the common law duties with which the landowner would be charged in the statute's absence, we nonetheless find common law principles to support our conclusion that Rocky Knob's conduct was not "wanton or malicious." Under the common law, the decedents would be classified as licensees on the night of the drowning. A licensee is one whose presence upon land is solely for his own purpose, in which the possessor has no interest, either business or social, and to whom the privilege of entering the premises is extended as mere favor by express consent or by general or local custom. *Kentucky & West Virginia Power Co. v. Stacy*, 291 Ky. 325, 329, 164 S.W.2d 537, 539 (1942). Obviously, the decedents were not upon the premises in furtherance of Rocky Knob's business interests. The record shows the marina store was closed and the drowning victims were not renters of docking slips at the marina.

> [A possessor of land] does ... owe the licensee the duty of refraining from willfully or wantonly causing him injury or from committing active negligence resulting in his injury, and, if the harm caused to the gratuitous licensee is the result of a natural or artificial condition of the property, known to the possessor of the property and which he should realize involves an unreasonable risk to the licensee and has reason to believe that the licensee will not discover the condition or realize the risk, the possessor owes the licensee the duty to make the condition reasonably safe or to

warn him of the condition and the risk involved therein.

*Id.* 291 Ky. at 329–330, 164 S.W.2d at 539–540.

■ Voluntary intoxication will not excuse the degree of care that a person must take for his or her own safety. *Preece v. Harless,* Ky.App., 662 S.W.2d 839, 842 (1983). Therefore, even if it were true that the management of Rocky Knob knew that drinking often went on in the parking lot due to it being a "hangout" for the local youth, this would not increase the common law duty owed to the decedents.

If these facts would not give rise to liability under the common law, it would be incongruous for this Court to allow for the possibility that liability might be found under the Recreational Use Statute, which could occur if we held that the determination of whether Rocky Knob's conduct was "wanton or malicious" is solely reserved for the finder of fact. The purpose of the statute is to limit the scope of duty which the common law placed on the recreational landowner, not broaden it. We will not frustrate the legislative intent but shall strive to give it effect. Accordingly, the summary judgment is affirmed.

All concur.