**CITY OF LOUISVILLE, Appellant/Cross-appellee,**

v.

**Laydell SILCOX, Appellee/Cross-appellant.**

Nos. 1996–CA–001362–MR, 1996–CA–001414–MR.

Court of Appeals of Kentucky.

Sept. 4, 1998.

that a sign at this entrance to the park stated "Entrance Fee 2.00 Per Car." In regard to this fee, Robert Elliot (Elliot), then interim Director of the Park, testified that at specified times on weekends there is a charge to park in the Garnettsville Picnic Area lot. The purpose of the fee is to control the number of cars entering the lot during peak hours, and the fee is per car regardless of the number of people in the car. Pedestrians and bicyclists can enter the park at the Garnettsville Picnic Area entrance at no cost. Elliot testified that there are other entrances to the park and other parking areas which are free, and that no fee is charged to hike or have access to the banks of Otter Creek.

Silcox and his friends hiked to Otter Creek. Silcox jumped into Otter Creek from a five foot embankment and sustained a severe injury to his heel and foot. Silcox testified that the water was muddy because others were in the creek, he could not see what he was jumping into, and that he would not have known if a log was in the water before he jumped. Silcox testified that one of his friends jumped in before he did and the water was chest high.

Silcox filed suit to recover damages for the injuries he received. During trial, the City moved for a directed verdict on the ground that the Kentucky Recreational Use Statute (Kentucky Revised Statutes (KRS) 411.190) rendered it immune to Silcox's complaint and that the City had no duty to warn Silcox of open and obvious hazards at common law. The trial court denied the City's motion, and judgment was rendered in favor of Silcox in the amount of $18,314.42.

KRS 411.190 provides in pertinent part:

. . . .

(2) The purpose of this section is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

(3) Except as specifically recognized by or provided in subsection (6), an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to

William C. Stone, Thomas Lukins, Louisville, for Appellant/Cross–appellee.

Harris J. Berman, Louisville, for Appellee/Cross–appellant.

Before BUCKINGHAM, GUIDUGLI and HUDDLESTON, JJ.

GUIDUGLI, Judge.

The City of Louisville (the City) appeals from a judgment entered by the Jefferson Circuit Court on March 8, 1996, in favor of appellee Laydell Silcox (Silcox) in the amount of $18,314.42. We reverse and remand on the City's direct appeal and dismiss Silcox's cross-appeal as moot.

On June 12, 1994, Silcox and several of his friends drove to Otter Creek Park (the Park), which is owned by the City. Silcox entered the park at the Garnettsville Picnic Area entrance. Testimony at trial showed

give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

(4) Except as specifically recognized by or provided in subsection (6), an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owned.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

. . . .

(6) Nothing in this section limits in any way any liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for recreational use thereof, except that in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

KRS 411.190(2), (3), (4), and (6). "Charge" is defined as "the admission price or fee asked in return for invitation or permission to enter or go upon the land." KRS 411.190(1)(d). The City contends on appeal that the fee charged to park at the Garnettsville Picnic Area is not a "charge" which would destroy its immunity under KRS 411.190.

There is no case law in Kentucky construing the word "charge" as used in KRS 411.190. However, Georgia has considered this exact issue under a recreational use statute which is almost identical to Kentucky's. In *Majeske v. Jekyll Island State Park Authority,* 209 Ga.App. 118, 433 S.E.2d 304 (Ga.App.1993), persons entering Jekyll Is-

land by car were charged a $1.00 parking fee. The fee was payable per car and was not dependent on the number of people in the car. No fee was charged for people who came to the island by foot, boat, airplane, non-motorized vehicle, or any other vehicle not required by law to be registered or operated by someone holding a valid license. Plaintiff, who had paid the $1.00 fee, sustained an injury to her ankle while stepping off a foot bridge. In holding that the $1.00 fee did not constitute a charge which would nullify immunity under Georgia's recreational use statute, the Court stated:

[T]he undisputed evidence shows that defendant's $1 charge is strictly a vehicle parking fee which is imposed only if entering the property in a licensed, motorized ground vehicle. [citation omitted]. The fact that vehicle reentry is not permitted without additional payment is not evidence that the charge is an admission fee. For the charge to constitute an admission fee it must be established that it is imposed in return for recreational use of the land.

*Majeske,* 433 S.E.2d at 305–306. Important to the Court's decision was evidence that the charge was levied per vehicle without regard for the number of people inside and that no fee was charged to those coming onto the island by other means. *Id.* at 306. Georgia courts have consistently interpreted the state's recreational use statute to find that mere payment of a per-vehicle fee to enter and park in a recreational area does not destroy the immunity granted by the statute. *See Quick v. Stone Mountain Memorial Association,* 204 Ga.App. 598, 420 S.E.2d 36 (Ga.App.1992); *Hogue v. Stone Mountain Memorial Association,* 183 Ga.App. 378, 358 S.E.2d 852 (Ga.App.1987); *Stone Mountain Memorial Association v. Herrington,* 225 Ga. 746, 171 S.E.2d 521 (Ga.1969). Other jurisdictions with similar recreational use statutes have reached the same conclusion. *See Flohr v. Pennsylvania Power & Light Co.,* 800 F.Supp. 1252 (1992) (fee paid to rent campsite at park did not destroy park's immunity under state's recreational use act where recreational facilities could be used free of charge); *Reed v. City of Miamisburg,* 96 Ohio App.3d 268, 644 N.E.2d 1094 (Ohio App.1993) (payment of fee to use picnic shel-

ter at park where plaintiff was not required to pay fee to use any of park's other facilities did not affect city's immunity under Ohio recreational use statute); *Garreans by Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (Neb.1984) (payment of fee to use camper pad at park where no charge was made to enter and use facilities at park did not remove city's immunity under Nebraska's recreational use statute).

■ We believe the same conclusion is compelled in this case. The evidence supports the City's argument that the $2.00 fee was charged to park at the Garnettsville lot and was not a fee to enter upon the land and use the park for recreational purposes. Pedestrians and bicyclists could use the same entrance for no fee, there were other entrances into the park where no fee was charged, and there are other parking areas in the park which can be used for no charge. As the fee was paid to park in that particular lot only and was clearly not paid in exchange for permission to enter the park and enjoy its facilities, the City was immune from liability under KRS 411.190.

Silcox argues that *Midwestern, Inc. v. Northern Kentucky Community Center*, Ky. App., 736 S.W.2d 348 (1987), compels the opposite result. In that case, which involved a 17 year old who was injured when he dove into a municipal swimming pool, children under the age of 18 were admitted free during certain times of the week and charged fifty cents to enter during other times. On the day the child was injured, he entered the pool without paying the fee. In holding that the fact that the child would have to pay a fee at certain times to enter the park did not remove the City's immunity from liability under KRS 411.190, the Court held that the language of the statute controlled and stated:

> According to the explicit provisions of KRS 411.190, the payment of a "charge" for permission to enter upon land for recreational use, including swimming (and, logically, diving), is the one element necessary to defeat the blanket immunity granted by the statute. Although Abner may have been subject to an admission charge at other times and had paid such charges before the date of his accident, it is undis-

puted that, on the day in question, he was not charged, nor did he pay, a fee for admission into the center's pool. As the element of payment of an admission fee is missing and there are no allegations of conduct rising to the level of wilful negligence, the City and center are entitled to the immunity granted by KRS 411.190 and the appellant's claim against them must necessarily fail.

*Midwestern*, 736 S.W.2d at 351. Silcox argues that logic would dictate that the opposite conclusion be reached where it can be shown that an injured party paid a fee on the date in question. We disagree. As the Court pointed out, we are bound by the clear language of KRS 411.190, which requires that a charge be paid. *Id.* As we have determined that the $2.00 fee paid by Silcox was not a charge as defined by the language of KRS 411.190, *Midwestern* has no application to this case.

We also do not believe that the City acted willfully or maliciously in this case so as to fall under the exception to the recreational use statute provided by KRS 411.190(6)(a). We believe our decision on this point is controlled by this Court's opinion in *Collins v. Rocky Knob Associates, Inc.*, Ky.App., 911 S.W.2d 608 (1996), where it was held that a marina did not act in a willful and malicious fashion in regard to the drowning of two individuals who went for a midnight swim. The Court stated:

> ... the situation before us involves a theory of "passive negligence," where the harm was allegedly caused by what the defendant did not do, but should have done. Rocky Knob did not create the lake nor is there any assertion that the deaths were caused by any unusual features maintained on the premises. As the trial court noted, various theories alluded to how the drownings might have occurred, such as the cold water impeded the victims ability to swim to shore; one or both were injured on jagged rocks at the bottom of the lake; alcohol may have attributed to their drowning; or they were possible victims of foul play. Because no evidence was shown tending to support any of these theories, they can only be viewed as speculation.

The only thing that is clear is that the deaths were by drowning in the lake waters. From the proof it must be concluded that any hazardous condition and the risk of swimming was reasonably obvious to the decedents and not of Rocky Knob's making. The risks were natural and inherent to bodies of water. Rocky Knob was entitled to assume that the decedents would see and observe that which would be obvious through the reasonably expected use of an ordinary person's senses and would act accordingly. KRS 411.190(7)(b) specifically provides that a person using the land of another for recreational purposes is not relieved from his obligation to exercise care as otherwise required by law. The failure of Rocky Knob to guard or warn against the dangerous condition cannot be said to be "willful or malicious."

*Collins*, 911 S.W.2d at 611–612.

■ Like Rocky Knob, the City did not create Otter Creek or introduce any object into the Creek which could have resulted in Silcox's injury. Silcox admitted that the water was muddy, that he could not see what he was jumping into, and that there was no way for him to tell if there were any obstructions beneath the surface of the water. In this situation, it is reasonable to conclude that the risks of jumping into muddy waters of a creek were natural and inherent to the creek in its natural condition and were reasonably obvious to Silcox. We do not believe that the City acted willfully or maliciously in this case.

Silcox raises several arguments on cross-appeal which are now moot due to our reversal of the judgment entered against the City. However, Silcox does raise one argument on cross-appeal pertaining to Kentucky's Recreational Use Statute which needs to be addressed.

Silcox argues that the trial court erred in refusing to allow him to introduce evidence regarding regulations pertaining to public swimming and bathing facilities, namely 902 KAR 10:120. Silcox maintains that these regulations effectively repeal KRS 411.190 in regard to pools and beaches. While there are no Kentucky cases dealing with this issue, at least one jurisdiction has held that regulations pertaining to the operation of swimming pools override any immunity granted by a recreational use statute. *See Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 326 Pa.Super. 509, 474 A.2d 605 (Pa.Super.Ct.1984), modified, 510 Pa. 1, 507 A.2d 1 (Pa.1986).

For purpose of Kentucky's regulations pertaining to swimming and bathing facilities, a "public swimming and bathing facility" is defined as "any natural or artificial body or basin of water which is *modified, improved, constructed, or installed* for the purpose of public swimming or bathing[.]" (emphasis added). 902 KAR 10:120 § 2(46). Silcox points to Elliot's testimony that the City's drawing of water from the Creek and removal of gravel from the Creek to clear the intake valve could have an effect on the Creek's level as evidence that the stream has been modified. Silcox also maintains that the fact that there were picnic tables nearby and marked hiking trails to the Creek encouraged people to come to the site.

■ Once again, the plain language of the regulation at issue controls. Under the language of the regulation, a creek such as Otter Creek is not a public swimming or bathing facility unless it has been modified or improved *"for the purpose of public swimming or bathing."* 902 KAR 10:120 § 2(46). We do not believe that the City's removal of water and gravel from Otter Creek was done for the purpose of improving or modifying the Creek for swimming purposes. The same is true as to the picnic tables and hiking trails; while they enhance the park's recreational value, those items do nothing to improve or modify Otter Creek for swimming purposes. Furthermore, Elliot testified that the City has never undertaken any modifications to Otter Creek for the purpose of swimming, and Silcox offered no evidence to the contrary. Thus, 902 KAR 10:120 does not apply in this case, and the trial court did not err in refusing to allow Silcox to present 902 KAR 10:120 into evidence at trial.

Having considered the parties' arguments on appeal, the judgment of the Jefferson Circuit Court entered March 8, 1996, is re-

versed and this matter is remanded with instructions to enter a judgment consistent with this opinion. As the issues which were raised by Silcox and not addressed in this opinion are rendered moot by our reversal of the judgment, Silcox's cross-appeal is dismissed.

All concur.