RENDERED: JULY 1, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0124-MR

CHARLOTTE A. HOWARD AND
JAMES G. HOWARD                                      APPELLANTS


APPEAL FROM HARDIN CIRCUIT COURT
v.        HONORABLE KEN M. HOWARD, JUDGE
ACTION NO. 14-CI-01458


THE CITY OF ELIZABETHTOWN
KENTUCKY; AUTO OWNERS
INSURANCE COMPANY; JEREMY
STUBBS; KENTUCKY KAOS; AND
STEVEN WIDMER                                          APPELLEES

AND


NO. 2020-CA-0133-MR

JEREMY STUBBS                              CROSS-APPELLANT


CROSS-APPEAL FROM HARDIN CIRCUIT COURT
v.        HONORABLE KEN M. HOWARD, JUDGE
ACTION NO. 14-CI-01458

CHARLOTTE A. HOWARD AND
JAMES G. HOWARD                                    CROSS-APPELLEES


OPINION
AFFIRMING APPEAL NO. 2020-CA-0124-MR AND
DISMISSING CROSS-APPEAL NO. 2020-CA-0133-MR

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND MCNEILL, JUDGES.

MCNEILL, JUDGE:  Charlotte and James Howard (the "Howards") appeal from

various orders of the Hardin Circuit Court dismissing their claims against

Kentucky Kaos ("Kaos"), Steven Widmer ("Widmer"), Jeremy Stubbs ("Stubbs")

and the City of Elizabethtown, Kentucky ("City").  Stubbs cross-appeals from the

trial court's August 14, 2018 order denying his motion for summary judgment.

Following our review, we affirm as to the appeal and dismiss the cross-appeal as

moot.

        This is a personal injury action arising out of injuries Charlotte

allegedly sustained on August 30, 2013.  According to the complaint, the Howards

were driving past Ring Road Softball Complex in Elizabethtown, Kentucky when a

softball broke the passenger side window of the Howards' vehicle, striking

Charlotte.  At the time of incident, Kaos, a recreational softball team comprised of

military and Department of Defense workers, was hosting a softball tournament at

the complex.  They had leased the complex from the City for the day to host the

tournament. Kaos did not play in the tournament, but was responsible for managing concessions, serving as umpires, and tournament logistics.

On August 26, 2014, the Howards filed a complaint in Hardin Circuit Court alleging negligence and loss of consortium against Kaos, the City, and United States Specialty Sports Association, Inc. ("USSSA").[1] Subsequently, Kaos moved to dismiss the Howards' claims against it, arguing that it was an unincorporated association incapable of being sued under Kentucky law. The trial court granted the motion. On January 23, 2017, the Howards filed an amended complaint naming Stubbs, Kaos' coach, and Widmer, who helped purchase liability insurance for the event, as defendants.

Shortly thereafter, Stubbs and Widmer filed a motion for summary judgment, arguing that the Howards' claims against them were barred by the statute of limitations. Following an evidentiary hearing, the trial court granted the motion as to Widmer, finding that the Howards' claims against Widmer did not relate back to the original complaint and were thus barred by the statute of limitations. However, the trial court denied the motion as to Stubbs.

---

[1] The Howards' claims against USSSA were summarily dismissed on January 27, 2017, and are not a subject of this appeal.

The City also moved for summary judgment, arguing the Howards' claims were barred by Kentucky's recreational use statute, KRS[2] 411.190. The trial court agreed and granted the motion. Finally, following additional discovery, Stubbs again moved for summary judgment, arguing that the doctrine of *res ipsa loquitur* was inapplicable to the Howards' negligence claim and that their negligence claim failed as a matter of law. The trial court granted the motion, making the court's previous orders final and appealable. This appeal followed.

The Howards argue the trial court erred in granting Kaos' motion to dismiss, and in granting summary judgment in favor of the City, Stubbs, and Widmer. We will address each dismissal in turn. A motion to dismiss, pursuant to CR[3] 12.02(f), for failure to state a claim is a question of law, and we review the issue *de novo*. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010). The pleadings must be liberally construed in a light most favorable to the nonmoving party, and the allegations contained in the complaint are taken as true. *Id.* The trial court should not grant the motion "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *James v. Wilson*, 95 S.W.3d 875, 883 (Ky. App. 2002) (citation omitted).

---

[2] Kentucky Revised Statutes.

[3] Kentucky Rules of Civil Procedure.

The trial court granted Kaos' motion to dismiss, finding that it was an unincorporated association incapable of being sued under Kentucky law. The Howards argue this was error because 1) Kaos denied it was an unincorporated association in its answer and the trial court relied on unsworn statements to the contrary in granting the motion to dismiss; 2) Kaos waived the issue of its capacity to be sued by failing to make a "specific negative averment" as required by CR 9.01; and 3) Kaos should be estopped from asserting its lack of capacity to be sued because the Howards detrimentally relied on its answer denying that it was an unincorporated association.

Concerning their first point, the Howards' complaint alleged that Kaos "is an unincorporated association of persons, which is, and was at the time of the events set forth herein, present and doing business in the Commonwealth of Kentucky . . . as a softball team." Kaos partly denied this allegation in its answer, asserting that it "is not a legal entity doing any business in the Commonwealth of Kentucky, and does not have any agents, servants or employees." The Howards read Kaos' answer as denying its status as an unincorporated association. Based upon this reading, the Howards argue the trial court erred in relying upon unsworn statements in the motion to dismiss that Kaos is an informal association incapable of being sued. We disagree.

-5-

First, Kaos' assertion that it "is not a legal entity doing any business in the Commonwealth of Kentucky, and does not have any agents, servants or employees[,]" is clearly countering the complaint's allegation that it was "doing business" in Kentucky. This statement would make no sense if the answer is read as denying Kaos' unincorporated status. Further, the trial court did not rely on any unsworn statements in granting the motion, but on allegations in the Howards' own complaint which specifically state that Kaos is an unincorporated association. We note that the Howards have not actually challenged Kaos' status as such, but instead argue error on other bases.

We also find that Kaos did not waive the defense of its capacity to be sued. CR 9.01 requires that "[w]hen a party desires to raise an issue as to the legal existence of any party or the capacity of any party to . . . be sued . . . he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Here, the Howards' complaint alleged that Kaos was an unincorporated association. Kaos' answer to the complaint asserted that it was "not a legal entity doing business in the Commonwealth of Kentucky, and does not have any agents, servants or employees." Despite the Howards' claim to the contrary, this was a "specific negative averment . . . [with] supporting particulars" which "raise[d] an issue as to

the legal existence" of Kaos as required by the rule. The Howards cite no case law interpreting CR 9.01 to require anything more.

Finally, the Howards argue that Kaos should be estopped from asserting its lack of capacity to be sued because they were misled by Kaos' denial of its status as an unincorporated association. We find this argument without merit. As noted above, Kaos never denied its status as an unincorporated association. It denied that it was doing business in Kentucky. Further, the Howards' allegation that they were misled is unreasonable considering that their own complaint alleged that Kaos was an unincorporated association and that Kaos asserted that it was "not a legal entity doing any business . . . and does not have any agents, servants or employees."

The Howards next argue the trial court erred in granting the City's motion for summary judgment. The trial court determined that Kentucky's Recreational Use Statute, KRS 411.190, barred the Howards' claims against the City. "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR 56.03). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v.*

*Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "The circuit court's decision to grant a motion for summary judgment is reviewed *de novo.*" *Roach v. Hedges*, 419 S.W.3d 46, 47 (Ky. App. 2013) (citation omitted). Issues of statutory interpretation are also reviewed *de novo. Dolt, Thompson, Shepherd & Conway, P.S.C. v. Commonwealth ex rel. Landrum*, 607 S.W.3d 683, 687 (Ky. 2020) (citation omitted).

"The cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." *Jefferson Cty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (citations omitted). "All statutes of [Kentucky] shall be liberally construed with a view to promote their objects and carry out the intent of the legislature, and the rule that statutes in derogation of the common law are to be strictly construed shall not apply to the statutes of this state." KRS 446.080(1).

The legislature enacted the Recreational Use Statute to "encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability[.]" KRS 411.190(2). To that end, the "Recreational Use Statute displaces the common law duties with which the landowner would be charged in the statute's absence[.]" *Collins v. Rocky Knob Associates, Inc.*, 911 S.W.2d 608, 612 (Ky. App. 1995), *discretionary review denied* (Jan. 10, 1996).

KRS 411.190 provides in pertinent part:

(3) Except as specifically recognized by or provided in subsection (6) of this section, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for such purposes.

(4) Except as specifically recognized by or provided in subsection (6) of this section, an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreation purposes does not thereby:

. . .

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of those persons.

KRS 411.190(3)-(4). "The words of the statute are absolute and unqualified" and qualifying property owners owe "no duty to anyone" except under the circumstances provided in subsection 6. *Coursey v. Westvaco Corp.*, 790 S.W.2d 229, 232 (Ky. 1990).

The Howards argue that the Recreational Use Statute does not apply because Charlotte's injury did not occur on the land subject to immunity and she was not engaged in recreational activity at the time of her injury. The trial court disagreed, finding that KRS 411.190(4)(c) grants immunity to owners of recreational use land even when the injury occurs off-premises. The court relied

upon the Recreational Use Statute's broad public policy and the specific language of KRS 411.190(4)(c). We agree with the trial court and find that Kentucky's Recreational Use Statute applies under the facts of this case.

No Kentucky case has considered whether Kentucky's Recreational Use Statute applies under these specific circumstances. In *Poore v. 21st Century Parks, Inc.*, 619 S.W.3d 409 (Ky. App. 2020), *discretionary review denied* (Apr. 20, 2021), a panel of this Court held that the Recreational Use Statute applied to injuries occurring on off-premises waterways. Plaintiff had gone on a kayaking trip and had entered the waterway using an access point located on land owned by the defendant. However, plaintiff was injured at a point on the river not located on defendant's land. Plaintiff argued that the Recreational Use Statute did not apply because defendant did not own the waterway where plaintiff was injured.

Relying upon the implicit holding of *Collins v. Rocky Knob Associates, Inc.*, and authority from other states, the Court of Appeals held that Kentucky's Recreational Use Statute applied to bar plaintiff's claims because his claims were "inextricably interwoven with the recreational purpose for which [he] used the [defendant's property]." *Poore*, 619 S.W.3d at 422. Therefore, there is precedent that the Recreational Use Statute can apply to injuries occurring off-premises, at least where plaintiff's use of that property is "inextricably interwoven" with her use of adjacent property for recreational purposes.

However, *Poore* did not consider the issue of whether the Recreational Use Statute applies to an off-premises injury when the plaintiff is not engaged in recreational activity. We have located one case from another state addressing this exact scenario and find its analysis persuasive. In *Wang v. Nibbelink*, 208 Cal. Rptr. 3d 461, 464 (Cal. Ct. App. 2016), in a case of first impression, the California Court of Appeals held that their version of the Recreational Use Statute applied in situations "where [] recreational users of the land cause injury to persons outside the premises who are uninvolved in the recreational use of the land[.]"

In *Wang*, a horse escaped from property owned by defendants and trampled plaintiffs as they exited their car to dine at a restaurant on adjacent property. Plaintiffs sued defendants, but their claim was dismissed when the trial court granted summary judgment, finding that California's recreational use statute barred plaintiffs' claims. On appeal, plaintiffs argued that the statute did not apply to off-premises injury to a person not participating in recreational use of the land.

In finding the statute applicable, the Court began its analysis by observing that California Civil Code § 846 "contains separate immunities shielding landowners from liability for (1) injuries *to* recreational users and (2) injuries *caused by* recreational users." *Wang*, 208 Cal. Rptr. 3d at 470 (citing *Klein v. United States*, 235 P.3d 42, 49 (Cal. 2010)). Subsection (a) of the statute

"absolves landowners of two separate and distinct duties: (1) The duty to keep the premises safe for recreational users; and (2) the duty to warn recreational users of hazards." *Id.* at 471 (citation omitted). The Court then noted that subsection (c) "adds an additional immunity that shields the landowner from liability for injuries caused by (rather than to) recreational users." *Id.* (internal quotation marks and citation omitted).

The *Wang* Court relied upon the plain language of subsection (c) in finding that California's recreational use statute applied to off-premises injury to non-recreational users:

> Subpart (c) of the third paragraph of section 846 is not limited to injuries to persons on the premises and therefore on its face encompasses persons off-premises such as Ms. Wang and her husband. It is not limited to injuries to recreational participants. Had the Legislature wanted to narrow the third paragraph's immunity to injured recreational users, it could have done so, as it did in the first paragraph.

*Wang*, 208 Cal. Rptr. 3d at 474.

The Court further explained its reasoning:

> It thus appears section 846, paragraph 3, subpart (c) eliminates, in the recreational land use context, the landowners' otherwise-existing "permission-liability" or "licensee-control" liability for the conduct of third parties on the land. Since that liability applied not only to on-premises injury, but also to off-premises injury to persons uninvolved in the activity occurring on the defendant's land, logic dictates that section 846's elimination of that liability should be coextensive with both aspects of that

-12-

liability. Plaintiffs proffer no reason why not. As the trial court noted, it would make no sense for a landowner to be immunized from liability toward a bystander inches within the property line, yet be liable for injury to a bystander standing inches outside the property line.

*Id.* at 474-75.

Finally, the Court concluded that this interpretation furthered the statute's purpose of encouraging landowners to make their land available for recreational use by removing the risk of gratuitous tort liability. *Id.* at 475 (citations omitted). It noted that "[m]aking landowners liable when a recreational user injures an uninvolved person on adjacent property would undermine this legislative purpose to encourage private landowners to allow recreational use of their land." *Id.*

We agree with *Wang*'s reasoning and find it determinative. KRS 411.190 is substantially similar to California Civil Code § 846. Like § 846(c), KRS 411.190(4)(c) absolves landowners of liability for "any injury to person or property caused *by* an act or omission" of a recreational user. (Emphasis added.) This is distinct from KRS 411.190(3)'s liability protection for injuries *to* recreational users. By its plain language, KRS 411.190(4)(c) is not limited to persons engaged in recreation.

The subsection provides that a landowner shall not be liable for "*any injury to person*" caused by a recreational user. (Emphasis added.) The legislature

-13-

chose the words "any injury" and "we assume that the [legislature] meant exactly what it said, and said exactly what it meant." *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017) (internal quotation marks and citation omitted). Under this subsection, whether the person was engaged in recreation is irrelevant. If the legislature wanted such limiting language, it could have added it.

Further, this interpretation is consistent with the statute's purpose, which is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability[.]" KRS 411.190(2).[4]

Here, Charlotte alleges she was injured when a softball hit from the City park crashed into her car window.[5] At least under the facts of this case, we hold the Recreational Use Statute applies. The Howards have not argued that the City is liable under either of the exceptions in KRS 411.190(6). Therefore, the trial

---

[4] We are aware KRS 411.190(2) provides it will accomplish this purpose by limiting recreational use landowners' liability "toward persons entering thereon for such purposes." However, as noted above, KRS 411.190(4)(c) is not limited to persons engaged in recreation. When interpreting statutes, "[w]e presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes." *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) (citations omitted). Limiting landowners' liability for injuries caused to persons off-premises and not engaged in recreation furthers the statute's overall scheme "to encourage owners of land to make land and water areas available to the public for recreational purposes[.]" KRS 411.190(2).

[5] We assume that playing softball qualifies as a "recreational purpose" under the statute. The Howards have not raised this issue on appeal.

-14-

court did not err in finding that the Recreational Use Statute bars the Howards' claims against the City and in granting summary judgment.

The Howards next argue the trial court erred in granting summary judgment in favor of Widmer. The trial court determined that the Howards' claims against Widmer did not relate back to the original complaint and were thus barred by the statute of limitations. The Howards do not challenge the trial court's substantive ruling, but instead argue it improperly held an evidentiary hearing prior to granting summary judgment. We find this argument without merit.

The Howards cite no law in support of their argument, but instead make an argument from silence that "[n]o provision of CR 56 references or allows for disposition of a motion for summary judgment by a court conducting an evidentiary hearing." A quick search of Kentucky case law reveals no instance of a trial court being reversed for granting an evidentiary hearing on a motion for summary judgment. In fact, it reveals the opposite. *See City of Shepherdsville v. Nichols Fire Prot. Dist.*, Nos. 2004-CA-001259-MR and 2004-CA-001261-MR, 2006 WL 1509008, at *4 (Ky. App. June 2, 2006), *discretionary review denied* (Nov. 15, 2006) (reversing summary judgment and remanding for an evidentiary hearing to resolve genuine issue of material fact).[6] We find no error.

---

[6] Cited for purposes of illustration, not as persuasive authority per CR 76.28(4)(c).

Lastly, the Howards argue the trial court erred in granting summary judgment in favor of Stubbs on their *res ipsa loquitur* claim. We disagree. *Res ispa loquitur* "is an evidentiary doctrine which allows a jury to infer negligence on the part of the defendant." *Sadr v. Hager Beauty School, Inc.*, 723 S.W.2d 886, 887 (Ky. App. 1987). "Reliance upon the doctrine of res ipsa loquitur is predicated upon a showing that (1) the defendant had full control of the instrumentality which caused the injury; (2) the accident could not have happened if those having control had not been negligent; and (3) the plaintiff's injury resulted from the accident." *Id.* Whether to apply this doctrine "is within the trial court's sound discretion." *Id.*

The trial court determined that the Howards could not prevail on a *res ipsa loquitur* theory because they could not prove that Stubbs had full control of the instrumentality that caused Charlotte's injuries. It is undisputed that Stubbs did not hit the baseball that allegedly stuck the Howards' car window. Instead, the Howards argue that Stubbs, as lessee, had control of the softball field. The trial court disagreed, finding that there was no evidence that "Stubbs was in full control of the softball field, that he was able to make any changes to the design of the field or [that] he was able to do any maintenance if needed."

On appeal, the Howards cite no evidence that Stubbs had full control over the softball field; instead, they simply argue that a genuine issue of material fact exists as to this question. However, the burden is on the Howards to prove all

-16-

three elements of *res ipsa loquitur*.  On a more fundamental level, "there is no evidence as to what the instrumentality was that caused [Charlotte's] injury, and there is no evidence that it was under the control or management of [Stubbs]." *Helton v. Forest Park Baptist Church*, 589 S.W.2d 217, 219 (Ky. App. 1979).  The complaint alleges that a softball from Ring Road Softball Complex struck the Howards' vehicle window.  But Charlotte had no cuts or bruises on her head and the Howards never saw a softball strike the window.  "Under Kentucky law, the doctrine of res ipsa loquitur is inapplicable where the instrumentality producing the injury or damage is unknown or is not in the exclusive control of the defendant." *Id.* (citation omitted).  Because the Howards cannot prove that Stubbs had full control of the instrumentality that caused Charlotte's injury, the trial court did not err when it declined to apply the doctrine of *res ipsa loquitur*.

We would further note that even assuming Stubbs had full control of the softball field, and accepting the Howards' allegations as true, Stubbs would still be entitled to summary judgment, albeit for a different reason.  Under this hypothetical, Stubbs would fall under the definition of "owner" set out in KRS 411.190(1)(b) as an "occupant . . . in control of the premises[.]"  Therefore, Stubbs would be entitled to immunity pursuant to Kentucky's Recreational Use Statute, for the same reasons set forth above pertaining to the City.

As a final matter, Stubbs cross-appeals from the trial court's August 14, 2018 order denying his first motion for summary judgment. Because we have found that Stubbs was entitled to summary judgment above, Stubbs' cross-appeal is moot, and we will not address its merits.

Based upon the foregoing, the orders of the Hardin Circuit Court dismissing the Howards' claims are affirmed. Stubbs' cross-appeal is dismissed as moot.

ALL CONCUR.

BRIEFS FOR
APPELLANTS/CROSS-
APPELLEES:

Harry B. O'Donnell IV
Louisville, Kentucky

BRIEFS FOR APPELLEES
KENTUCKY KAOS AND STEVEN
WIDMER, AND
APPELLEE/CROSS-APPELLANT
JEREMY STUBBS:

David S. Strite
Rachel K. Dalton
Louisville, Kentucky

BRIEF FOR APPELLEE THE CITY
OF ELIZABETHTOWN:

Jason Bell
Elizabethtown, Kentucky