Filed 10/13/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| YAN WANG et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>GREGORY NIBBELINK et al.,<br><br>  Defendants and Respondents. | C073871<br><br>(Super. Ct. No. 34201000090933CUPOGDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge.  Affirmed.

Lamb and Frischer Law Firm, Bryan Lamb and Richard Frischer; and Paul D. Fogel, Reed Smith for Plaintiffs and Appellants.

Horvitz & Levy, Jeremy B. Rosen and Julie L. Woods; Knudtson & Nutter, Gigi M. Knudtson and Brian D. McFarlin for Defendants and Respondents.

To encourage landowners to allow public use of the land for recreational purposes, Civil Code section 846 shields landowners from liability "for any injury to person or

1

property caused by any act of the person to whom permission has been granted," subject to statutory exceptions. (Civ. Code, § 846(c), 3d par.; unless otherwise set forth, statutory section references are to the Civil Code.) In this case of first impression, we hold section 846[¶ 3](c) shields landowners from liability where such recreational users of the land cause injury to persons outside the premises who are uninvolved in the recreational use of the land, even where the plaintiffs also allege that the landowners' neglect of their own property-based duties contributed to the injury.

A horse ran away from a meadow owned by defendants Gregory Nibbelink, Bevlee Nibbelink, Gary D. Nibbelink, Linda A. Nibbelink, Robert G. Goulding, Diane K. Goulding, and Nibbelink Revocable Family Trust (meadow landowners) onto adjacent property known as Strawberry Lodge (Lodge) and trampled plaintiff Yan Wang as she and her husband, plaintiff Tyler Raihala, got out of their car to dine at the Lodge. This appeal involves plaintiffs' negligence claims against the meadow landowners who invoke section 846.

The horse was part of the Wagon Train -- an annual historical event simulating Old West travel by stage coach across the Sierras in Northern California. The meadow landowners were not involved in the event but allowed the event organizers and participants to use the meadow for overnight camping and horse containment. Plaintiffs had nothing to do with the Wagon Train, not even as spectators.

Plaintiffs appeal from summary judgment (Code Civ. Proc., § 437c) entered in favor of the meadow owners, contending (1) the meadow owners forfeited section 846 by failing to plead it as an affirmative defense in their answer; (2) the statute does not apply to off-premises injury to a person who was not a participant or spectator of the recreational use; (3) even if section 846 applies, triable issues of fact preclude summary judgment; and (4) even if section 846 relieves the landowners from liability for negligence of the recreational users -- Highway 50 Association (HFA) and horse rider Robert Donald Burnley -- in failing to secure the horse, the landowners are liable for their

2

own negligence in failing to ensure adequate secure containment for the event's horses, failing to build a fence, and failing to warn those nearby who were not participating in the event.

We affirm summary judgment in favor of the meadow landowners. Our decision does not affect potential liability of other defendants who are not parties to this appeal. (Code Civ. Proc., § 579; *Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 578 [A final appealable judgment may be entered in favor of fewer than all defendants if it leaves no issue to be determined as to those defendants].)

FACTS AND PROCEEDINGS

This appeal presents issues in all three stages of summary judgment review: " 'First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. . . .' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644.)

Plaintiffs' complaint alleged defendant Highway 50 Association (HFA) organized and operated an annual "recreational event" known as Wagon Train, wherein old-time stage coaches, accompanied by horses with riders, traveled for a period of days from one location in Northern California to the next, simulating "Old West" travel. HFA pre-arranged with property owners along the route for nightly accommodations for lodging and camping for participants and their horses.

One such stop was at defendant Strawberry Lodge, where participants could stay at the Lodge or camp in the nearby meadow and leave their horses in the meadow. The

meadow landowners had permitted HFA to use the meadow for the Wagon Train for several years and knew there would be up to 75 horses.

On June 8, 2009, the Wagon Train made its stop for the night at the meadow and Lodge. That evening, plaintiff Wang and her husband happened to stop at the Lodge to dine at its restaurant. As Wang got out of the car, she was knocked over by a runaway horse that had participated in the Wagon Train that day, had been "tied down" in the meadow by his rider, defendant Burnley, and had escaped and run free onto the Lodge parking lot. As against Burnley, the complaint alleged he negligently selected a horse of unsuitable temperament for the event, negligently tied down and secured his horse to a tree limb on the meadow property, and then left to retrieve his vehicle elsewhere.

As against the meadow landowners, plaintiffs' complaint claimed negligence under section 1714 (injury caused by want of ordinary care in management of one's property) and negligent infliction of emotional distress suffered by Raihala personally witnessing the injury to his wife. An initial loss of consortium claim was later dismissed.

The negligence count alleged the meadow owners were negligent in that they:

(1) knew there needed to be an adequate number of safe containment options for the horses but failed to assure that they or HFA provided an adequate number;

(2) failed to assure that they or HFA promulgated and distributed rules and regulations that would assure safe containment;

(3) failed to assure there were trained staff in adequate numbers to enforce safety rules and regulations;

(4) failed to make adequate repairs and improvements to existing fencing so as to enclose the meadow property; and

(5) failed to warn those nearby, who were not involved with the event, of the danger.

4

Unlike HFA, which pleaded section 846 as an affirmative defense, the meadow owners' answers denied all the complaint's allegations but did not specify section 846 or recreational immunity as an affirmative defense.

The meadow owners filed a motion for summary judgment based only on section 846. Citing a declaration of owner Diane Goulding, they presented as undisputed facts The meadow (which some call Strawberry Meadow) borders Highway 50 to the north and the property owned by defendant Strawberry Lodge to the east. The meadow defendants purchased the meadow property in 1996. They had no involvement in organizing, supervising, or observing the Wagon Train event. HFA approached them and asked for permission to continue HFA's past practice of using the meadow for overnight camping during the Wagon Train. The meadow owners gave permission, subject to the meadow owners being included as additional insureds on the HFA's liability insurance policy. The meadow owners received nothing else of value. Before this incident occurred, Goulding had no knowledge of any similar mishap. Citing only the complaint, the separate statement of undisputed facts asserted: On June 8, 2009, Wagon Train participant Burnley secured his horse to a tree branch in the meadow. The horse freed itself, ran off the meadow property, entered the parking lot owned by neighbor Strawberry Lodge, and struck plaintiff Wang.

Plaintiffs filed written opposition to the motion on the merits of the section 846 issue. Plaintiffs argued section 846 does not provide immunity because they were not on the meadow owners' property and were not "recreating"; and even if section 846 applied to such off-premises injuries, triable issues existed, e.g., "parking" horses was not a recreational purpose. Plaintiffs submitted Burnley's declaration that he participated in the Wagon Train event, riding his own horse Sugar and stopped for a "layover" at the meadow. He tied her to a tree so that he could take the event bus to retrieve his vehicle where he had parked it the preceding night. He intended to drive his vehicle down to the Strawberry Lodge "area for the duration of the layover." Plaintiffs also submitted

5

depositions from meadow owners indicating a partial fence separated the meadow from Highway 50 when they purchased the property, and they never discussed adding fencing. Plaintiffs also asserted, among other things, that the landowners knew, and it is common sense, that a horse can "spook[]" and pose a risk of injury.

The landowners made evidentiary objections that were sustained by the trial court, but for purposes of the summary judgment motion, the landowners' reply papers accepted as undisputed the opposition's factual assertions (though not their legal conclusions).

We reject plaintiffs' assumption that we will disregard the landowners' evidence to which plaintiffs objected. Plaintiffs fail to acknowledge or show abuse of discretion in the trial court's overruling of their objections based on plaintiffs' failure to submit a proposed order in the form required by California Rules of Court, rule 3.1354(c). We disregard plaintiffs' belated attempt to challenge the evidentiary ruling in their reply brief, which does not even address the rule of court. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10 [reviewing court may disregard new points raised for the first time in the reply brief].) Even if we were to reach the issue, plaintiffs' evidentiary challenges are unavailing on their face, e.g., that Goulding's declaration lacked foundation by failing to identify what person from HFA asked to use the property.

At the hearing of the motion, plaintiffs raised a new issue -- that the meadow owners forfeited section 846 by failing to plead it as an affirmative defense in their answer to the complaint. The court allowed supplemental briefing, and the meadow owners also filed a motion to amend the answer to specify section 846 as an affirmative defense.

The court ruled the meadow owners were not required to plead section 846 as an affirmative defense because, although commonly referred to as an "immunity," the statute negates the duty element needed for a negligence cause of action. The court nevertheless granted the landowners' motion to amend their answer. The owners do not

6

refute plaintiffs' appellate assertion that it "appears" the owners never filed or served the amended answer.

The trial court granted summary judgment, ruling section 846 applies to off-premises injury caused by on-premises recreational users; no triable issue existed on the elements or exceptions of the statute; and plaintiffs failed to allege or present any independent negligence by the meadow owners that could be conceptually separated from the alleged duty on the part of the meadow owners to control the recreational users of the land. The trial court denied plaintiffs' motion for new trial. Plaintiffs appeal from the ensuing judgment.

DISCUSSION

I

*Standard of Review*

In moving for summary judgment, defendants had the burden to show that the cause of action has no merit because an essential element cannot be established or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, 861.) We review the record and the determination of the trial court de novo, viewing the evidence in the light most favorable to plaintiffs as the losing parties. (*Kahn v. East Side Union High School Dist*. (2003) 31 Cal.4th 990, 1003.)

We also apply de novo review to questions of law regarding statutory interpretation. (*Earl v. State Personnel Bd*. (2014) 231 Cal.App.4th 459, 462.)

II

*Failure to Plead Section 846 as Affirmative Defense in Answer to Complaint*

Plaintiffs argue the landowners forfeited section 846 by failing to plead it in their answer. Plaintiffs also claim the landowners failed to cite the statute in answering interrogatories. However, the cited pages of the record show only that one owner said he

7

was unable to answer the interrogatories because discovery had just begun. We conclude there was no forfeiture.

The complaint and answer delimit the scope of issues material to a summary judgment motion. (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381.) Generally, a defendant must assert an affirmative defense such as a statutory immunity in the answer to the complaint or the affirmative defense is forfeited. (*Cruey v. Gannett Co.* (1998) 64 Cal.App.4th 356, 367 (*Cruey*); Schwing, 1 Cal. Affirmative Defenses (2d ed.) § 1.11.) But an exception may exist where the complaint alleges facts indicating applicability of the defense or where the affirmative defense is raised and met on the merits during a summary judgment proceeding. (*Cruey,* at p. 367; accord, *Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 193-194, fn. 11.)

The landowners argue they were not required to plead section 846 because the statute, though commonly referred to as an immunity provision, actually negates the duty of care that is an essential element of the plaintiff's cause of action. (*Klein v. United States of America.* (2010) 50 Cal.4th 68, 78 (*Klein*) [using the term "immunity" for convenience].) Additionally, the complaint, which alleged the Wagon Train is a "recreational" event for which the landowners owed a duty of care, put into issue the absence of duty for recreational use created by section 846.

However, regardless whether the statute had to be pleaded in the answer, the trial court granted defendants leave to amend the answer to do so. Plaintiffs do not argue or demonstrate any abuse of discretion in this ruling. Nor do plaintiffs show they were prejudiced by defendants' apparent failure to file and serve the amended answer. Instead, plaintiffs merely argue the proposed amended answer, by alleging HFA and Burnley entered the meadow for recreational purposes, alleged a legal conclusion rather than a fact.

Moreover, section 846 was the sole basis for the summary judgment motion, and plaintiffs responded to the section 846 matter on the merits in their written opposition. "Given the long-standing California court policy of exercising liberality in permitting amendments to pleadings at any stage of the proceedings [citation] and of disregarding errors or defects in pleadings unless substantial rights are affected [citation], we believe that a party should be permitted to introduce the defense . . . in a summary judgment procedure so long as the opposing party has adequate notice and opportunity to respond. Here, the defense . . . was asserted in the opening brief in the motion for summary judgment. [The plaintiff] took the opportunity to respond by arguing the inapplicability of the [defense]. He has not shown that he was prejudiced by the process." (*Cruey, supra*, 64 Cal.App.4th at p. 367 [discussing privilege defense].)

We conclude defendants did not forfeit section 846.

III

*Section 846 Applies to Off-Premises Injuries to Non-recreators*

Plaintiffs argue section 846 does nothing more than abrogate the landowner's duty to the recreational user and therefore does not shield the landowner from liability for off-premises injuries to persons uninvolved in the recreational use caused by recreational users. We address *post* plaintiff's separate argument that the statute does not immunize landowners from their own negligence.

Section 846 is a statutory exception to section 1714, which provides: "Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1099 (*Ornelas*).) Negligence claims based on premises liability are governed by section 1714, *absent a statutory provision declaring an exception* to the fundamental principle enunciated by section 1714. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 111-112, 118-119 (*Rowland*) [section 1714, enacted in 1872, states a civil

9

law and not a common law principle, though some have urged that the principle embodied in this code section serves as the foundation of our negligence law].)  Section 846 is such a statutory exception.

In the absence of section 846, landowners could potentially be liable for injury to a victim outside of the landowners' premises, caused by a third party with a connection to the premises.  (*Annocki v. Peterson Enterprises, LLC* (2014) 232 Cal.App.4th 32, 37 (*Annocki*) [in highway collision between victim and restaurant patron, restaurant could be liable for failing to warn patrons leaving the restaurant that only a right turn could safely be made from the restaurant parking lot onto the highway]; *Rosales v. Stewart* (1980) 113 Cal.App.3d 130 (*Rosales*) [landlord might be liable for tenant's firing gun that killed child on adjacent property if landlord knew tenant occasionally discharged gun in backyard and was likely to continue to do so and constituted a threat to others and if landlord had opportunity and ability to eliminate the danger]; *Orser v. George* (1967) 252 Cal.App.2d 660, 671 (*Orser*) [land occupier who was present when invitee-hunter fired gun may be liable to off-premises victim].)  The trial court in this case referred to the concept of liability for third-party conduct as "permission-liability."  (See *Wylie v. Gresch* (1987) 191 Cal.App.3d 412, 418, fn. 5 [although *Rowland, supra*, 69 Cal.2d 108, eliminated rigid adherence to classifying duty based on status (permittee, invitee, trespasser), status may be relevant to the question of liability].)

Thus, there is a potential for liability in this case unless section 846 shields the landowners from liability.  We now turn to the question whether section 846 applies to relieve the landowners of liability for off-premises injuries to persons uninvolved in recreational use of the land, caused by recreational users of the land.  We explain *post*, that section 846 applies despite plaintiffs' allegations that the landowners' own negligence contributed to the injuries.

10

A.    Rules of Statutory Interpretation

In construing statutes de novo, "we aim 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citations.] We look first to the words of the statute, 'because the statutory language is generally the most reliable indicator of legislative intent.' [Citations.]" (*Klein, supra*, 50 Cal.4th at p. 77.) "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 (*Burden*); see also, Code Civ. Proc., § 1858.) We construe the statute to give effect to each word, avoiding a construction making some words surplusage. (*Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 921.)

"[I]f the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.] In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute . . . ." ' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1039 (*Torres*); *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 724 (*Calvillo-Silva*) [construing § 847's limitation of landowner's liability for injuries to persons committing certain felonies on the property].)

Where the question "also calls for an examination of the underlying factual predicate for application of the statutes," review is de novo if the evidentiary record on that point is both sufficient and undisputed. (*Librers v. Black* (2005) 129 Cal.App.4th 114, 124.)

B.    Statutory Language

Section 846 contains separate immunities shielding landowners from liability for (1) injuries *to* recreational users and (2) injuries *caused by* recreational users. (*Klein, supra*, 50 Cal.4th at pp. 78-79.) This case involves only the latter, which is found in the third paragraph of the statute.

Section 846 provides:

"[¶ 1.] An owner of any estate or any other interest in real property, whether possessory or nonpossessory, *owes no duty of care to keep the premises safe for entry or use by others* for any recreational purpose *or to give any warning* of hazardous conditions, uses of, structures, or activities on those premises *to persons entering* for a recreational purpose, except as provided in this section.

"[¶ 2.] A 'recreational purpose,' as used in this section, includes activities such as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, private noncommercial aviation activities, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites.

"[¶ 3.] [A landowner] *who gives permission to another for entry or use for the above purpose upon the premises does not thereby* (a) extend any assurance that the premises are safe for that purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) *assume responsibility for or incur liability for any injury to person or property caused by any act of the person to whom permission has been granted except as provided in this section.*

12

"[¶ 4.]  This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

"[¶ 5.]  Nothing in this section creates a duty of care or ground of liability for injury to person or property."  (Italics added.)

The first paragraph of section 846 absolves landowners of two separate and distinct duties:  (1)  The duty to keep the premises safe for recreational users; and  (2)  the duty to warn recreational users of hazards.  (*Klein, supra*, 50 Cal.4th at pp. 78-79.)

In contrast, the third paragraph, subpart (c), of section 846 "adds an additional immunity" that "shields the landowner from liability for injuries caused by (rather than to) recreational users."  (*Klein, supra*, 50 Cal.4th at pp. 78-79.)

In *Klein*, the California Supreme Court was concerned only with the first aspect of the statute's first paragraph; the other aspects were relevant only insofar as they assisted in construing the safe-premises immunity.  (*Id*. 50 Cal.4th at p. 79.)  Although our case involves the statute's third paragraph, *Klein*'s analysis affords guidance.

*Klein* interpreted section 846 in response to certification of a question from the Ninth Circuit Court of Appeals.  In the federal case, a recreational bicyclist riding on a paved road in a national park was injured when struck by an automobile driven by a volunteer working for the United States Fish and Wildlife Service.  (*Id*. 50 Cal.4th at p. 71.)  The plaintiff sued the United States government and the worker.  The federal government invoked section 846 as a defense.  (*Id*. at p. 73.)  The Ninth Circuit asked the California court to decide whether section 846 applies to " 'acts of vehicular negligence committed by the landowner's employee in the course and scope of his employment that

13

caused personal injury to a recreational user of that land.' " (*Id*. at pp. 71-72.) The issue in the California Supreme Court opinion was whether the government was liable for its employee's negligence. (*Id*. at p. 73.)

*Klein* determined section 846's liability shield does not extend to acts of vehicular negligence by a landowner or by the landowner's employee while acting within the course of the employment. (*Id*. at p. 72.) The Supreme Court based this conclusion on "section 846's plain language. The statutory phrase 'keep the premises safe' is an apt description of the property-based duties underlying premises liability, a liability category that does not include vehicular negligence. Furthermore, a broad construction of that statutory phrase would render superfluous another provision of section 846 shielding landowners from liability for failure to warn recreational users about hazardous conditions or activities on the land." (*Id*. at p. 72.)

*Klein* gave three reasons for concluding that section 846 does not relieve landowners of the duty to avoid vehicular negligence: "First, the phrase 'keep the premises safe' is an apt description of the property-based duties underlying premises liability, a liability category that does not include vehicular negligence. Second, differences in the statutory descriptions of the safe-premises immunity and the hazard-warning immunity suggest that the former is considerably narrower in scope and does not apply to activities like motor vehicle driving. Third, the expansive construction of the safe-premises clause urged by the United States would render the hazard-warning clause superfluous." (*Id*. 50 Cal.4th at p. 79.)

The Supreme Court elaborated on the three reasons:

First, it was unlikely the Legislature intended the premises-based language to be interpreted so broadly as to include any and all factors that might create a personal injury risk on one's property. (*Klein, supra*, 50 Cal.4th at pp. 79-80.) "Had the Legislature intended such a broad immunity, it would have been a simple matter to provide in section 846 that landowners owe no duty of care to avoid personal injury to persons using their

14

land for recreation.  By providing instead that a landowner owes no duty to 'keep the premises safe,' the Legislature has selected language implying a narrower immunity, focused on premises liability claims arising from property-based duties. . . .  '[B]roadly speaking, premises liability alleges a defendant property owner allowed a dangerous condition on its property or failed to take reasonable steps to secure its property against criminal acts by third parties.'  [Citations. . . [P]remises liability is based on the duty 'to maintain land in one's possession in a reasonably safe condition'] . . . The duty to drive a motor vehicle safely, by contrast, does not arise from ownership or possession of land." (*Ibid.*)

The second reason, said *Klein*, was based on a comparison of the statutory language describing the safe-premises and hazard-warning immunities.  (*Id*. at p. 80.)  In the first paragraph, the statutory description of the hazard-warning immunity "expressly refers to hazardous 'uses of' and 'activities on' as well as 'conditions' of the owner's land.  By contrast, the statutory description of the safe-premises immunity makes no reference to uses or activities.  It does not, for example, absolve a landowner of a duty to 'keep *activities* on the premises safe,' but only from the duty to keep 'the premises' themselves safe.  Had the Legislature intended to extend the liability shield to negligently conducted activities, such as dangerous driving, it could simply have provided, in the first paragraph, that a landowner owes no duty of care to avoid, prevent, remedy, or give any warning of hazardous conditions, uses, structures, or activities, on the land.  The Legislature did not do so.  Instead, it selected language carrying a strong implication that the safe-premises immunity is narrower than the hazard-warning immunity, and does not extend to unsafe activities such as negligent driving of a vehicle."  (*Id*. at p. 80; orig. italics.)

The third reason, said *Klein*, was that a broad reading of the safe-premises immunity -- to absolve owners of any duty of care to avoid personal injury to recreational users -- would encompass tort claims based on a failure to warn of potentially dangerous

15

activities because, as to such activities, a landowner can keep the premises safe either by conducting the activities in a safe manner or by warning others of the risks posed by those activities. (*Id*. 50 Cal.4th at p. 81.) This broad interpretation would render superfluous the separate liability shield for failure to warn of hazardous activities. (*Ibid*.) "Although section 846 is broad in many respects, it is not all-encompassing." (*Ibid*.)

Regarding the statute's fourth paragraph -- that the statute "does not limit the liability which otherwise exists . . . for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity" -- *Klein* said: "This provision establishes a limitation on, or exception to, the various section 846 immunities. The reference to a 'willful or malicious failure to . . . *warn against* a dangerous condition, use, structure or activity' (italics added) limits the hazard-warning immunity provided by section 846's first paragraph. The reference to a 'willful or malicious failure to guard . . . against a dangerous condition, use, structure or activity' limits both the safe-premises immunity granted by the first paragraph (as to dangerous conditions and structures) and the third paragraph's immunity from liability for injuries caused *by* recreational users (*as to dangerous uses and activities*) [italics added]. The words 'guard . . . against a dangerous . . . activity' aptly describe a duty relating to the dangerous activity of a third party, such as a recreational user, and would be an odd choice of words to describe a duty relating to the landowner's own activities. Thus, section 846's fourth paragraph does not establish a limitation or exception for the landowner's own willful or malicious conduct. We may infer that the Legislature perceived no need for such a limitation inasmuch as it had not provided a corresponding immunity for activities, such as vehicle driving, conducted by the landowner or the landowner's employee." (*Klein, supra*, 50 Cal.4th at pp. 81-82; orig. italics.)

Here, the question is whether section 846 applies to off-premises injury to persons not participating in recreational use of the land -- matters not addressed in *Klein*.

16

Since the first paragraph of section 846 absolves a landowner of duty towards recreational users only (*Klein, supra*, 50 Cal.4th at p. 78), it does not relieve the meadow landowners in this case from a duty, if any, owed to these plaintiffs, who were neither participants nor spectators in the Wagon Train event. (See *Ornelas, supra*, 4 Cal.4th at p. 1102 [section 846 applies to both participants and spectators, even though the statute did not expressly address spectators, because both participants and spectators take advantage of the recreational opportunities, and neither may be heard to complain when injury results therefrom], criticized on other grounds in *Klein, supra*, 50 Cal.4th at p. 85.)

Accordingly, any immunity for the meadow owners must be found in the third paragraph of section 846 -- which creates a separate immunity from the first paragraph. (*Klein, supra*, 50 Cal.4th at pp. 78-79.)

The third paragraph, in subpart (c), broadly relieves landowners of liability for "any injury to person" caused by "any act" of the recreational user. The trial court here referred to this subpart as a "permission-liability clause" because it relieves a landowner from the liability that could otherwise arise from a grant of permission to use the land that would create a special relationship imposing a duty on the landowner to control the permitee.

Subpart (c) of the third paragraph is not limited to injuries to persons on the premises and therefore on its face encompasses persons off-premises such as Ms. Wang and her husband. It is not limited to injuries to recreational participants. Had the Legislature wanted to narrow the third paragraph's immunity to injured recreational users, it could have done so, as it did in the first paragraph.

Plaintiffs argue that because subpart (c) of the third paragraph refers to persons to "whom permission has been granted," its scope is limited to injury to permittees. However the quoted reference is to injury "caused by" any act of the permittee.

Plaintiffs' construction would have us add language not placed there by the Legislature, i.e., injury to a person *on the premises for recreational purposes*. Where the

17

words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.  (Code Civ. Proc., § 1858; *Burden, supra*, 2 Cal.4th at p. 562.)  *Ornelas, supra*, 4 Cal.4th 1095, disapproved judicial insertion of language in section 846 by Courts of Appeal which had held section 846 is confined to land "suitable" for recreational use, even though the statute contains no such limiting language.  *Ornelas* rejected this "judicial construct, without any basis or support in the statutory language.  Indeed, . . . the text of section 846 is extremely broad; the immunity applies to the 'owner of *any* estate or *any* other interest in real property . . . .'  (Italics added.)  The Legislature made no distinction between developed and undeveloped property or between urban and rural land, and imposed no requirement that the site be in a 'natural' or unaltered state."  (*Id*. at p. 1105.)  Accordingly, *Ornelas* held section 846 is not limited to land "suitable" for recreational use and applied where a child was injured while playing on farm equipment in an area of the farm where farm equipment was stored.  (*Id*. at pp. 1103-1109.)  Thus, *Ornelas* declined to add language to the statute.

We recognize *Ornelas* itself construed a different aspect of section 846 to encompass something not expressly stated in the statute, i.e., that recreational use includes both participants and spectators.  (*Id*. 4 Cal.4th at p. 1102 [plaintiff's presence on the property was occasioned by recreational use of the property].)  However, *Ornelas* did not add words but rather construed the words "recreational use," and that construction advanced the purpose of the statute.  (*Ibid*. [because both the participant and spectator take advantage of the recreational opportunities offered by the property, neither may be heard to complain when injury results therefrom].)

Thus, the immunity in the third paragraph by its plain language applies here, because "any injury to person" includes the injury to Ms. Wang and her husband.

It thus appears section 846[¶3](c) eliminates, in the recreational land use context, the landowners' otherwise-existing "permission-liability" or "licensee-control" liability

18

for the conduct of third parties on the land. Since that liability applied not only to on-premises injury, but also to off-premises injury to persons uninvolved in the activity occurring on the defendant's land, logic dictates that section 846's elimination of that liability should be co-extensive with both aspects of that liability. Plaintiffs proffer no reason why not. As the trial court noted, it would make no sense for a landowner to be immunized from liability toward a bystander inches within the property line, yet be liable for injury to a bystander standing inches outside the property line. Plaintiffs disagrees, viewing this as a salutary "bright line" result. But this bright line would make no sense in the context of the otherwise-existing potential liability.

Additionally, construing subpart (c) by its plain broad language advances the purpose of the statute -- though that purpose is often stated in terms of relieving landowners of liability *to* recreational users (the focus of the statute's first paragraph). "In section 846 the Legislature expressed a strong policy that land should be open to recreational use. Section 846 accomplishes this purpose by immunizing persons with interests in property from tort liability to recreational users, thus making recreational users responsible for their own safety and eliminating the financial risk that had kept land closed." (*Hubbard v. Brown* (1990) 50 Cal.3d 189, 192 [holder of federal grazing permit is entitled to section 836 immunity, despite federal regulation that the permit creates no property interest].) The legislative policy was to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for enumerated recreational uses. (*Ibid.*)

Making landowners liable when a recreational user injures an uninvolved person on adjacent property would undermine this legislative purpose to encourage private landowners to allow recreational use of their land.

Plaintiffs cite case law from other states construing recreational immunity statutes. While cases from other states are not binding on us (*People v. Hartsch* (2010) 49 Cal.4th

19

472, 509), California courts may adopt other states' construction of uniform laws to promote consistency. (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc*. (2009) 171 Cal.App.4th 939, 955.) However, our recreational use statute predates adoption of the model act adopted by some states. (*Ornelas, supra*, 4 Cal.4th at p. 1100, fn. 3 [after California enacted section 846 in 1963 (Stats. 1963, ch. 1759, § 1, p. 3511), the Council of State Governments developed a model act in 1965, which many states have adopted.] Moreover, while plaintiffs here rely on a Delaware Superior Court case, discussed *post*, the Delaware Supreme Court elsewhere observed California's recreational use law is broader than Delaware's law. (*Gibson v. Keith* (1985) 492 A.2d 241, 248.)

Plaintiffs incorrectly suggest that *all* other states have held recreational immunity inapplicable to off-premises victims. However, the meadow owners note an Indiana court construed a similar statute by its plain meaning in *Schwartz v. Zent* (1983) 448 N.E.2d 38 (*Schwartz*), holding Indiana's recreational use statute applied where a landowner permitted use of his property for hunting, and a hunter's errant shot injured the victim who was tending animal traps on neighboring land. Like section 846, the Indiana statute said landowners had no duty to keep premises safe for recreational users, but also said " 'The owner of such premises does not assume responsibility for nor incur liability for any injury to person or property caused by an act or failure to act of other persons using such premises . . . .' " (*Id*. at p. 39, citing IC 1976, 14-2-6-3 (Burns Code Ed., 1981 Repl.).) "The language of that second sentence is clear. It provides that the landowner shall not be liable for 'any injury to person or property' caused by such recreational user. Our legislature employed the words 'any injury'; we presume those words were chosen intentionally. [Citation.] Under this portion of the statute, the location of [the victim] when he was injured is of no consequence." (*Schwartz, supra*, 448 N.E.2d at pp. 39-40.)

The cases plaintiffs' cite do not help them. *Higgins v. Walls* (Del.Super.Ct. 2005) 901 A.2d 122 -- another case of a hunter's errant gunshot striking a nonparticipant

20

outside the premises -- found Delaware's Public Recreation Act did not apply to protect the landowner from liability, on the ground that the introductory statute for the recreational immunity chapter declared " 'The purpose of this chapter is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability *toward persons entering thereon for such purposes . . . .*' " (*Id*. at p. 130, fn. 22, and p. 132, fn. 32, citing DEL. CODE ANN. tit. 7, § 5901 (2001).) *Higgins* did *not* discuss or consider section 5904 of the same Code, which provides (similar to the California statute) that a landowner who permits persons to use the land for recreational purposes does not thereby incur liability "for any injury to person or property caused by an act o[r] omission of such persons." *Higgins* viewed Delaware's Act as a quid pro quo between landowner and recreational user, dependent on the relationship between the two. (*Id*. at pp. 131-132.) "The landowner offers up his land for public enjoyment, surrendering exclusive use of the property. In return, he enjoys a statutory privilege from liability in the sense that his duty of care to recreational users is extinguished. . . . On the other hand, the recreational user enjoys the opportunity to use the land, but gives up his cause of action against the landowner for non-willful or wanton negligence. When the plaintiff never enjoys the benefits of the recreational use of the property, it is difficult to conceive of any basis upon which it can be said that he has forfeited his claim against the negligent landowner." (*Id*. at p. 132, fn. 31.)

We are not persuaded by *Higgins*. It did not even consider the most pertinent provision of its statutory scheme, about injury caused by recreational users. Moreover, unlike Delaware, the California statute does not declare as a blanket purpose of the entire legislation a purpose to encourage landowners by limiting liability "to[ward] persons entering" the premises. To the contrary, although the first paragraph of section 846 specifies persons entering the land, our Supreme Court has observed the third paragraph of section 846 "adds an additional immunity" that "shields the landowner from liability

21

for injuries caused by (rather than to) recreational users." (*Klein, supra*, 50 Cal.4th at pp. 78-79.)

Other out-of-state cases cited by plaintiffs are inapposite. In *Dealers Serv. & Supply Co. v. St. Louis Nat'l Stockyards Co.* (1987) 508 N.E.2d 1241, 155 Ill.App.3d 1075 (*Dealers*), which did not even involve recreational use, the landowner used and allowed others to use the property as a dumping ground for combustible materials. A fire broke out on the defendant's property and spread to the plaintiff's property. (*Id.* at p. 1242.) The defendant argued a landowner has no liability for damages off his premises caused by a natural condition on his property. (*Id.* at p. 1243.) The appellate court noted the Restatement (Second) of Torts said possessors of land were generally not liable for harm to persons outside the land caused by a natural condition on the land, but dumping of combustible materials was not a natural condition. (*Id.* at p. 1244.) The defendant was under a duty to exercise reasonable care for the safety of the plaintiff as an adjoining landowner, under traditional negligence principles. (*Ibid.*) Every person has a duty to maintain their premises in a reasonably safe condition to avoid the spread of fire, and a landowner's control of its land gives the landowner a power of control over those whom he allows to enter the land, which he must exercise for the protection of those outside the premises. (*Id.* at pp. 1244-1245.) *Dealers* cited California cases imposing on landowners an independent duty to prevent the accumulation of inflammable materials on their premises and imposing liability even if the fire was caused by a third person. (*Id.* at p. 1244, citing *Scally v. Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806; *Reid & Sibell, Inc. v. Gilmore & Edwards Co.* (1955) 134 Cal.App.2d 60.)

Plaintiffs acknowledge that recreational use immunity was not at issue in *Schropp v. Solzman* (Iowa Supreme Court 1982) 314 N.W.2d 413, which held an absentee landowner was liable for failure to maintain a berm which broke and damaged the neighbors' home after years of neglect by the defendant landowner and erosion from trespassers riding vehicles over it. Plaintiffs suggest -- without foundation -- that, since

the Iowa recreational immunity statute was enacted 11 years before the court opinion, the failure to raise it must mean that the lawyers and judges knew it did not apply.

*Harrison v. Middlesex Water Co*. (1979) 403 A.2d 910 [80 N.J. 391] held the New Jersey recreational use statute did not immunize a landowner from liability for the drowning of a victim who entered the land upon hearing cries of help from two teens who fell through ice while skating on a reservoir.  The court held the statute inapplicable because (1) it did not apply to land in populated residential neighborhoods, and (2) the victim died in the course of an activity (rescue) that was the very antithesis of recreational activity.

Thus, the out-of-state cases do not help plaintiffs in this appeal.

We disregard plaintiffs' reference to an unidentified Pennsylvania verdict finding a property owner partially at fault when a hunter shot a bullet that struck a person outside the property (after which the Pennsylvania Legislature assertedly amended the statute to exclude liability for injury to persons, wherever such persons are located, caused by hunting).

We conclude the immunity established in the third paragraph of section 846 applies to off-premises injuries to persons uninvolved in the recreational use caused by recreational users, even where the plaintiff also alleges that the landowner's negligence regarding its own property-based duties contributed to the injury.

C.    Legislative History

Because the statutory language is clear and serves a rational purpose, resort to extrinsic sources is unnecessary and uncalled for, but we may nevertheless consider whether our conclusion is consistent with any legislative history.  (*Klein, supra*, 50 Cal.4th at p. 82; *Ornelas, supra*, 4 Cal.4th at p. 1105, fn. 8.)

The legislative history does not show that any specific consideration was given to the question of injuries to nonparticipants outside the premises being used for recreational

23

purposes. The legislative history of section 846 is "sparse" but reveals a broad legislative intent to encourage landowners to let their land be used for recreational purposes. (*Ornelas, supra*, 4 Cal.4th at p. 1106, fn. 8.) Our Legislature has amended section 846 several times to add various types of activities to the non-exclusive list of recreational purposes. (*Ornelas, supra*, 4 Cal.4th at p. 1100, fn. 5.) Most recently, the Legislature added private noncommercial aviation activities. (Stats. 2014, ch. 52, § 1, eff. Jan. 1, 2015.)

Though the legislative history is inconclusive, imposing liability on a landowner for injury caused by recreational use to nonparticipants outside the premises would undermine the statutory purpose to encourage landowners to allow such recreational use of private land.

D.     Public Policy Considerations

Plaintiffs argue the public policy of premises liability codified in section 1714 -- that everyone is responsible for injury occasioned to another by want of ordinary care in the management of property -- should govern over the policy of encouraging recreational use of land. But the latter policy is also a public policy codified by statute in section 846 and is an exception to section 1714. Where a negligence claim is based on premises liability, section 1714 governs, absent a statutory provision declaring an exception to the fundamental principle enunciated by section 1714. (*Rowland, supra*, 69 Cal.2d at pp. 112, 118-119.) Section 846 is such a statutory exception.

"Under the fundamental doctrine of the separation of powers . . . [Cal. Const., art. III, § 3], a statute is not subject to objection on the ground that it contravenes public policy. As a legislative enactment it becomes public policy." (*English v. Marin Mun. Water Dist*. (1977) 66 Cal.App.3d 725, 730 (*English*), validity questioned on other grounds in *Avila v. Citrus Community College Dist*. (2006) 38 Cal.4th 148, 156, and overruled on other grounds in *Delta Farms Reclamation Dist. v. Superior Court* (1983)

24

33 Cal.3d 699, 707.) *English* held that section 846 constitutes an exception to section 1714 liability for want of ordinary care in the management of his property, and hence is not in conflict with the Supreme Court decision (*Rowland v. Christian, supra,* 69 Cal.2d 108) rejecting traditional common law distinctions (e.g., invitee versus trespasser) determinative of landowner's liability under section 1714. (*English, supra*, 66 Cal.App.3d at pp. 728-730 [no recovery for injuries sustained by plaintiff while riding his motorcycle on a path across defendants' properties].) Although section 846 was enacted in 1963 -- before *Rowland* -- the statute was amended several times thereafter to add additional recreational uses. "These amendments are indicative of a legislative policy to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for enumerated recreational uses. . . . [T]he fact that in the face of *Rowland* the Legislature has broadened the scope of the immunities created by the section is a clear indication that it intended an exception in favor of landowners as against the liability imposed by section 1714." (*English,* at p. 731.)

We conclude section 846 applies to relieve a landowner of liability for injury caused by a recreational user to an off-premises nonparticipant.

IV

*Theory of Direct Negligence by Landowners*

Plaintiffs argue that, even if section 846 relieves the meadow owners from liability for the recreational users' negligence, plaintiffs still have a viable theory based on the landowners' own negligence. Plaintiffs argue section 846[¶3](c) immunizes a landowner only for acts of recreational users, not for the landowner's breach of its own non-delegable property-based duties under section 1714, where a dangerous condition of the property *contributes* to harm non-recreational users. Plaintiffs claim the trial court orally

25

agreed section 846 did not apply to landowner negligence, but plaintiffs misrepresent the comment which in any event is not binding on us, and they cite no supporting legal authority.

Plaintiffs allege no negligent act or omission by the meadow owners independent of the recreational use. They focus on the absence of fencing, but also allege the landowners breached their duty by failing to (1) have an adequate number of "containment options" for "Event participants," (2) create and distribute rules to ensure safe containment by event participants, (3) have trained staff to enforce the rules, and (4) warn those nearby of the danger. Plaintiffs go even further and assert in their reply brief the dubious claim that a jury could find the meadow owners' failure to "have and maintain" fencing was the "sole cause" of plaintiffs' injuries. Plaintiffs also claim they alleged an independent basis for liability -- distinct from a premises liability claim -- by alleging the meadow owners failed "to coordinate with or seek assurances from HFA so that the risks associated with horse-overcrowding could be reduced or eliminated."

However, none of the allegations of direct negligence by the meadow landowners can be conceptually separated from their alleged duty to control or warn of the recreational use of the land based on ownership of the land.

As we explained *ante*, section 846 -- by providing in the fourth paragraph that "This section" does not limit liability for *willful or malicious* "failure to guard or warn against a dangerous condition, use, structure or activity" -- necessarily implies that the third paragraph of the statute itself relieves landowners from liability if their own negligence in failing to guard or warn contributes to injury caused by the recreational users. Moreover, the third paragraph says a landowner who allows recreational use of its property does not "thereby" incur liability, obviously referencing otherwise-existing property-based duties.

Our Supreme Court construed a similar immunity statute in *Calvillo-Silva, supra*, 19 Cal.4th 714. The issue there was section 847, which provides (a) a landowner is not

26

liable "to any person for any injury or death that occurs upon that property during the course of or after the commission of [enumerated] felonies[,]" but "(f) This section does not limit the liability of an owner or an owner's agent which otherwise exists [1] for willful, wanton, or criminal conduct, or [2] for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." (*Id*. at pp. 724-725.) There, the plaintiff-robber argued the immunity was inapplicable because the store employee intentionally shot the plaintiff, and because the statute pertained only to issues of premises liability. (*Id*. at pp. 723, 727.) The Supreme Court disagreed, holding that -- despite the absence of explicit language in the statute -- the immunity is available not only for negligence, whether or not related to conditions, uses, structures, or activities of the property, but also for the intentional use of deadly or injurious force when such force is justifiable, i.e., in defense of oneself or one's property. (*Id*. at pp. 730, 735.) Triable issues existed as to whether the force was justifiable. (*Id*. at pp. 735-737.)

Of interest here, *Calvillo-Silva* observed section 847 contained no provision explicitly stating that the immunity applies to conduct unrelated to conditions or uses of the property. (*Id*. 19 Cal.4th at p. 725.) However, the statute, by delineating in subdivision (f) only two conduct-based exceptions to subdivision (a)'s broad immunity for any injury, necessarily implies that conduct not falling within those two exceptions is immunized when the statutory elements have been shown. (*Ibid*.) "In sum, section 847 confers immunity for any 'failure to guard or warn against a dangerous condition, use, structure, or activity' that is not 'willful or malicious,' and for any other type of 'conduct' that is not 'willful, wanton, or criminal,' so long as the statutory predicates for the immunity have been established." (*Id*. at p. 726.) This reading was consistent with section 847's purpose, reflected in the legislative history, to protect landowners from lawsuits brought by persons injured on the property during commission of a crime. (*Ibid*.)

27

Here, the third paragraph of section 846 shields the landowner from liability for any injury "caused by any act of the [recreational user]." It does not expressly shield the landowner from liability for its own acts that may have contributed to the injury. However, the fourth paragraph, by delineating that the landowner is not immunized for willful or malicious failure to guard against a dangerous condition, use, structure or activity, necessarily implies that the landowner *is* immunized for its own *negligent* failures in those regards. As indicated, *Klein, supra*, 50 Cal.4th at pages 81-82, said the fourth paragraph's reference to a willful or malicious failure to guard against a dangerous condition, use, structure or activity limits the third paragraph's immunity from liability for injuries caused *by* recreational users *as to dangerous uses and activities*. *Klein*, where the only issue was an activity -- negligent driving by the landowner's employee -- had no occasion to consider applicability of the statute to landowner liability for negligent failure to guard against a dangerous condition or structure on the property.

Insofar as plaintiffs think it would be fair for landowners who negligently contribute to the injury to share liability with recreational users, such a narrow construction of section 846 would thwart the purpose of the statute for the reasons we have already explained. Though not controlling here, a legislative committee analysis of the 2014 amendment adding noncommercial aviation activities to section 846 noted landowners were willing to allow the public to use their private airstrips, providing pilots with new places to explore and convenient access points for towns not served by public airports, and were confident these aviation activities constituted recreational activities but were "concerned with having to pay significant sums to defend themselves from such suits, and are unwilling to welcome the public until the threat of those lawsuits is dissipated." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1072 (2013-2014 Reg. Sess.) as amended Apr. 29, 2014, pp. 4-7; Stats. 2014, ch. 52, § 1, eff. Jan. 1, 2015.) In referencing the 2014 legislative history, we are mindful that one Legislature does not

28

speak authoritatively on the intent of an earlier Legislature.  (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243.)

Plaintiffs cite *McDaniel v. Sunset Manor Co*. (1990) 220 Cal.App.3d 1 -- an inapposite case not involving recreational use of the defendant's land, which held that a landlord by erecting a fence assumed a duty to maintain the fence, such that a triable issue of material fact existed as to whether it was foreseeable that a child would walk through a hole in the fence and drown in a creek located on adjacent property.  Here, the complaint alleged the meadow owners failed to make repairs and improvements to existing fencing.  Although the meadow owners' motion did not address the point, since they relied on section 846, plaintiffs admitted in factual assertions opposing summary judgment that the meadow "was originally fully fenced many years ago, as evidenced by remnants of fencing and posts found on the perimeter of the parcel," and "[i]n the 16 years they have owned the property, the Meadow Owners have never made any repairs to the fences."  The meadow owners agreed these facts were undisputed for purposes of the motion.  Thus, the meadow owners never installed fencing, and there was no assumption of duty as in *McDaniel*.

Plaintiffs' reply brief cites an opinion -- *Johnson v. Prasad* (2014) 224 Cal.App.4th 74 -- filed after the filing of respondents' brief in this appeal.  That case did not involve recreational use immunity.  Rather, we there held that homeowners who knowingly rented a home with a maintained swimming pool owed a duty of care under section 1714 to protect a child from drowning while visiting the tenants.  (*Id*. at p. 76.) Similarly inapposite is our opinion in *Vasilenko v. Grace Family Church* (2016) 248 Cal.App.4th 146, review granted Sept. 21, 2016, S235412, which raises the issue whether the owner of premises abutting a public street has a duty to an invitee to provide safe passage across that public street if the owner directs its invitees to park in its overflow parking lot across the street.

Plaintiffs claim to derive support from our opinion in *Orser, supra*, 252 Cal.App.2d 660. There, a hunter accidentally killed a person on adjacent land. The trial court granted summary judgment to three persons with a property interest in the hunting ground. We did not discuss section 846, which became effective after the hunting accident there at issue. (*Id*. at p. 665, fn. 2.) Addressing land occupiers' obligation to control the activities of their invitees, we held one of the land-occupiers, who was present and was also shooting at the same mudhen, could possibly be liable for failing to exercise reasonable care to control the activities of the others so they would not create an unreasonable risk to the victim. (*Id*. at pp. 671-672.) We therefore reversed. But we also said summary judgment was properly entered in favor of other land-occupiers who were absent when the fatal shooting took place and therefore could not be liable for failing to control the shooter. (*Ibid*.)

Here, plaintiffs did not dispute the landowners' undisputed fact that they did not supervise or even observe the Wagon Train event, i.e., they were absent. But in any event, section 846 now controls.

Plaintiffs cite the Illinois case -- *Dealers, supra*, 508 N.E.2d 1241 -- which described the common law duties owed by a landowner to an adjacent property owner to avoid fire risk in a case unrelated to recreational use. *Dealers* has no bearing on our case, because it did not involve competing codified public policies.

On appeal, plaintiffs claim the meadow owners "arguably" and "potentially" violated county ordinances requiring persons having control of livestock to contain the livestock and requiring persons entitled to possession or control of large animals to keep their fencing in good repair. (El Dorado County Ordinances 6.12.030, 6.12.070.) Plaintiffs' qualifiers reveal that even they are uncertain that the ordinances would apply here. In any event, although plaintiffs briefly mentioned the ordinances in opposition to summary judgment, they did not allege the ordinances in the complaint, which delimits the scope of issues material to summary judgment. Moreover, plaintiffs' cited authorities

30

do not support liability based on ordinance.  (*Brown v. George Pepperdine Foundation* (1943) 23 Cal.2d 256, 258 [landlord cannot escape liability for failure to maintain elevator in safe condition by delegating duty to independent contractor]; *Barnes v. Black* (1999) 71 Cal.App.4th 1473, 1478-1479 [landlord may be liable for failure to fence premises to prevent children on wheeled toys from careening into the street].)

Plaintiffs have no viable theory of liability that lay outside of section 846's shield.

V

*Prima Facie Case, Triable Issues of Material Fact*

Plaintiffs argue the moving papers were inadequate to meet defendants' prima facie burden for summary judgment, such that the trial court should have denied the motion without looking any further.  Plaintiffs also argue the record as a whole shows triable issues of material fact precluding summary judgment.

We have said the principle of harmless error cannot save the erroneous grant of a summary judgment motion upon an inadequate prima facie showing by the moving party, except for purely technical errors.  (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 947-949.)

Here, we conclude the moving papers sufficed; no triable issues of material fact appear; and summary judgment was proper.  Much of plaintiffs' analysis ignores the rule that, where relevant facts are not in dispute, questions of fact may be decided as a matter of law in a summary judgment proceeding.  (*Jackson v. Pacific Gas & Electric Co*. (2001) 94 Cal.App.4th 1110, 1115 (*Jackson*).)

A.  Recreational Purpose

Plaintiffs argue (1) the Wagon Train is not a recreational activity but rather a business venture by a non-profit business whose only purpose is to put on a "parade"; (2) "parking" horses in the meadow was not recreational but utilitarian; and (3) Burnley was

31

not recreating when he rode the horse onto the meadow and tied it to a tree to park it for the night.

Whether one enters property for a recreational purpose is a question of fact (*Ornelas, supra*, 4 Cal.4th at p. 1102), but, as noted, where relevant facts are not in dispute such questions may be decided as a matter of law in a summary judgment proceeding. (*Jackson, supra*, 94 Cal.App.4th at p. 1115.)

Plaintiffs cite cases where the recreational users were individuals or small groups and then makes an illogical leap that the statute applies "exclusively" to informal users and not to recreation organized by businesses such as HFA. Plaintiffs offer no supporting authority. Moreover, as defendants notes, the statute has been applied to business-sponsored recreational activity. (E.g., *Johnson v. Unocal Corp.* (1993) 21 Cal.App.4th 310 [landowner allowed free use of land for company picnic].) That HFA raises funds and charges participants to join the Wagon Train does not affect the landowner's reliance on section 846. (*Ibid.* [company employees paid company club to attend picnic].)

Section 846 expressly includes "camping," "nature contacting," and "enjoying historical, . . . scenic, [or] natural . . . sites" -- which clearly encompasses what happened here. Moreover, the statutory list is not exhaustive and the term recreational activity is to be broadly construed. (*Klein, supra*, 50 Cal.4th at p. 85.)

Plaintiffs' argument that we must focus on non-recreational utilitarian tasks of parking horses and tying up horses is wrong. Section 846 states the landowner who gives permission for recreational use does not incur liability for any injury caused by "any act of the person to whom permission has been granted." It does not say any "recreational" act. *Charpentier v. Von Geldern* (1987) 191 Cal.App.3d 101 (*Charpentier*), rejected as disingenuous, even frivolous, a plaintiff's claim that his admitted purpose of entering property to swim in a river did not make section 846 applicable to his assertedly non-recreational act of diving into the river to "cool off." (*Id.* at p. 112.) In *Jackson, supra*, 94 Cal.App.4th 1110, a minor entered the land only to retrieve his kite from an overhead

32

power line.  The appellate court rejected his argument that the act of retrieval was not recreational.  "Kite flying is indisputably a recreational activity, and, consistent with section 846's broad language, we conclude the steps a kite flyer takes to retrieve his wayward kite are included in the statutory definition of recreation."  (*Id*. at p. 1115.)  It did not matter whether he intended to keep flying the kite after he recovered it.  Since the plaintiff's presence on the property was occasioned by his recreational activity, section 846 applied.  (*Ibid*.)

Here, the presence of the Wagon Train and Burnley on the meadow property constituted the recreational activity of camping and enjoying the natural setting of the meadow as they rested themselves and the horses during the historical recreational event.

Plaintiffs cite our opinion holding that climbing a tree for play is a form of "nature contacting" constituting a recreational purpose under section 846.  (*Valladares v. Stone* (1990) 218 Cal.App.3d 362, 369 [citing dictionary definition that a recreational purpose is one intended to refresh the body or mind by diversion, amusement or play.])  Plaintiffs argue *Valladares* thus implied that if one climbs a tree not for play, the purpose may not be recreational.  However, *Valladares* does not stand for the proposition plaintiffs press in this appeal, i.e., that only moments devoted exclusively to recreation qualify for immunity.

Plaintiffs' other cited cases are inapposite, because those courts concluded there was no recreational use at all.  *Gordon v. Havasu Palms, Inc*. (2001) 93 Cal.App.4th 244, held plaintiffs injured while landing a private airplane were not engaged in a recreational activity because the sole purpose was to meet a family member for lunch at a restaurant.  (*Id*. at p. 256.)  *Gordon* said picnicking outdoors would be a recreational activity, but eating lunch in a restaurant business establishment is not.  Since *Gordon*, section 846 now expressly lists private noncommercial aviation as a recreational activity.  (Stats. 2014, ch. 52, § 1, eff. Jan. 1, 2015.)

33

*Domingue v. Presley of Southern California* (1988) 197 Cal.App.3d 1060, found a triable issue of material fact where the plaintiff attested the only reason he was bicycling on the defendant's land was because he was taking a shortcut to get to his friend's house. (*Id*. at pp. 1063-1064.)

*Gerkin v. Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, found a triable issue of material fact where a girl fell while walking across a bridge on her way to buy a candy bar and make a phone call, because her walk was not necessarily travel for pleasure. (*Id*. at p. 1025.)

Here, the Wagon Train and Burnley were using the land as part of their recreational activities. This case indisputably involves recreational use.

B.    Causation

Plaintiffs argue the moving papers offered no facts that plaintiffs' injuries were *caused* by a recreational user, but instead merely offered that event participant Burnley secured his horse to a tree branch on the meadow, and the horse "freed itself." However, the complaint -- which delimits the issues for summary judgment -- alleged Burnley negligently selected a containment location and negligently secured the horse to a tree in an unsafe manner, and the horse freed itself. For purposes of summary judgment, the meadow landowners accepted these allegations as true, and their separate statement of undisputed facts cited to the complaint itself. Moreover, in response to the landowners' separate statement of undisputed facts, plaintiffs asserted Burnley failed to secure his horse, and the horse did not free itself but rather was never properly tied or contained.

Plaintiffs' reply brief argues their injuries were caused by the meadow owners' failure to fence their property.

Plaintiffs' causation argument lacks merit.

34

C.    Consideration

Plaintiffs claim a triable issue exists as to whether the meadow owners received "consideration" for use of the land so as to render section 846 inapplicable. Their argument is not convincing.

Plaintiffs argue the landowners received consideration in the form of being named as an additional insured under HFA's insurance policy for the Wagon Train event. Plaintiffs cite contracts case law and section 1605, which provides: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

However, "consideration" in the context of section 846 must be for "permission to enter" (§ 846, ¶ 4), i.e., payment of an entry fee to use the land or other benefit that gives the landowner an immediate and reasonably direct advantage; it cannot consist simply of the right to be returned to the status quo upon the occurrence of a future event. (*Miller v. Weitzen* (2005) 133 Cal.App.4th 732, 739-740 [horse owner's payment of trail maintenance fees to her riding club, and the club's subsequent payment to the Association which maintained the riding trail across landowners' driveway, did not constitute section 846 consideration to the landowners by contributing to an improved trail system in the area in which they lived and decreasing their proportional maintenance payments]; *Johnson v. Unocal Corp., supra*, 21 Cal.App.4th at p. 317.) *Johnson* held a hold-harmless agreement between a landowner and the company sponsor of a picnic did not constitute consideration. "The mere potential for reimbursement for defense costs incurred if a suit were filed is neither current payment for entry nor a benefit currently received for entry." (*Id*. at p. 316.)

35

Plaintiffs argue the additional insured endorsement in this case afforded the landowners a benefit different from the hold-harmless agreement in *Johnson*, because the endorsement supposedly offers the additional insured protection against its own actions and omissions. Plaintiffs cite only to the Certificate of Insurance, which states the certificate holder (the meadow owners) "is an additional insured but only with respect to liability arising out of the operations of the named insured or premises owned by or rented to them. Wagon Train - use of Strawberry Meadows." Plaintiffs claim *Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110 Cal.App.4th 710, 720 (*Hartford*), in an insurance dispute with no recreational use issue, interpreted similar language to encompass coverage for the additional insured's own negligence.

Even assuming for the sake of argument that the insurance in this case protects the meadow owners from their own negligence, the only such supposed negligence was in failing to control or warn of the recreational use -- which is already shielded by section 846. The hold-harmless agreement in *Johnson* provided the landowner would not be liable for personal injury " 'directly or indirectly arising out of or resulting from, or in any way connected with the use, maintenance, or occupancy of [the] premises.' " (*Johnson, supra*, 21 Cal.App.4th at p. 314.) *Johnson* noted the hold-harmless agreement was consistent with the purpose of section 846 to limit landowner liability and, in essence, provided the same protection as the statute. (*Id*. at p. 317.)

We agree with the meadow landowners that treating the additional-insured certificate as consideration rendering section 846 inapplicable would turn the statute on its head.

The statutory exception for consideration does not apply.

D.    Express Invitation

Plaintiffs claim triable issues of fact exist as to whether the meadow owners "expressly invited" HFA to use the meadow for the Wagon Train event, which would

36

trigger the fourth paragraph of section 846, which states the statute "does not limit the liability which otherwise exists . . . to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner." Even assuming an invitation, this provision of the statute speaks only of liability *to* any persons who are expressly invited, not to third parties injured by invitees. Regardless of that matter, here there was no express invitation.

"Express invitation" in section 846 refers to a direct, personal request by the landowner to persons whom the landowner personally selects to come onto the property. (*Jackson, supra*, 94 Cal.App.4th at pp. 1115-1116; *Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 113.)

Here, plaintiffs claim to discern triable issues as to whether there was an invitation as opposed to mere permission to use the meadow in that (1) HFA claims there was a "standing proposition" to use the property; (2) the landowners *required* HFA to add them as additional insureds; (3) HFA brought 75 horses and stayed at the meadow for two days; (4) HFA published a magazine that referred to the landowners as their "Overnight Host"; and (5) HFA gave the landowners a plaque to commemorate their providing the meadow. Plaintiffs claim these facts suggest invitation rather than mere permission because "After all, one does not ask a casual licensee to add one as an additionally insured when using one's property for a recreational purpose, casually allow 75 horse[s] with many wagons to occupy one's property for 2 days, receive commemorative plaques for merely allowing someone to stay on one's property, or take the title as 'host' and public recognition for the provision of one's property, all without expressly inviting someone onto one's property."

Plaintiffs' argument is speculative and frivolous on its face; we need not respond to it further.

37

E.     Willful/Malicious

        1.     *Plaintiffs' complaint sounds in negligence*

Plaintiffs argue the landowners' moving papers failed to establish absence of a triable issue under the fourth paragraph of section 846, which states the statute "does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity . . . ."

A defendant moving for summary judgment based on a statutory defense must also negate any statutory exceptions to the defense if the complaint alleges facts triggering potential applicability of the exception. (*Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 651; *Nazar v. Rodeffer* (1986) 184 Cal.App.3d 546, 553.)

The parties disagree whether the complaint put the exception in issue. In order to put the exception at issue, the complaint had to allege (1) actual or constructive knowledge of the peril, (2) actual or constructive knowledge that injury is probable, as opposed to possible, and (3) conscious failure to act to avoid the peril. (*Charpentier, supra*, 191 Cal.App.3d at p. 113.)

Plaintiffs contend their complaint put willfulness/malice in issue by alleging that (1) the landowners were aware from prior experience that the event was "fraught with risk and peril to participants and bystanders" absent adequate containment options, and (2) the landowners ignored the necessity for adequate containment options, safety rules, adequate fencing, and warnings to persons nearby.

However, these allegations appear under the cause of action labeled "Negligence" and are described as "negligent" deficiencies. This case is thus different from plaintiffs' cited authority, which said the complaint alleged that the defendant willfully or maliciously failed to install warning signs or barriers to prevent children from climbing an electrical transmission tower. (*Bacon v. Southern Cal. Edison Co*. (1997)

38

53 Cal.App.4th 854, 857 [holding negligence in maintaining barrier was not enough to abrogate section 846 immunity]; see also, *Manuel v. Pacific Gas & Electric Co*. (2009) 173 Cal.App.4th 927 [compiling cases].)

Here, the moving papers did not need to address willfulness or malice, because the complaint did not allege willfulness or malice. Plaintiffs do not claim they asked for or were improperly denied leave to amend the complaint to allege willfulness or malice. Our own review of the record reveals plaintiffs at the hearing offered to amend if necessary to clarify they claimed the landowners were liable for their own negligence. The trial court denied leave to amend because plaintiffs did not describe how they would amend the complaint.

## 2. *Triable Issues*

Plaintiffs claim triable issues exist as to willfulness or malice, because the landowners had actual or constructive knowledge that horses are dangerous and that as many as 75 horses were on their meadow bordering an interstate highway; remnants of fencing indicate the meadow was once but is no longer fully fenced and these owners have not done any fencing; and the landowners failed to provide or ensure horse containment.

Plaintiffs' argument does not come anywhere close to a triable issue of willfulness or malice. We disregard plaintiff's unsupported assertion that there were several prior instances of runaway horses and spooked horses on unspecified portions of the Wagon Train that were assertedly reported in the newspaper.

We conclude section 846 applies; no triable issues exist; and plaintiffs fail to show any potential for liability independent of section 846. Accordingly, the trial court properly entered summary judgment in favor of the meadow landowners.

39

DISPOSITION

The judgment entered March 27, 2013, in favor of defendants Gary D. Nibbelink, Linda A. Nibbelink, Gregory Nibbelink, Bevlee Nibbelink, Robert G. Goulding, Diane K. Goulding, and Nibbelink Revocable Family Trust is affirmed.  These defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278.)


        HULL            , J.


We concur:


    BLEASE          , Acting P. J.


    MAURO         , J.


40